IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| INGA DOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-01209-P |
| | § | |
| KELLER WILLIAMS REALTY, INC., | § | |
| JOHN DAVIS, GO MANAGEMENT, LLC, | § | |
| DAVID OSBORN, SMOKEY GARRETT, | § | |
| AND GARY KELLER, | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS KELLER WILLIAMS REALTY, INC. AND GARY KELLER'S BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION BASED ON PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Keller Williams Realty, Inc. ("KWRI") and Gary Keller ("Keller") (collectively "Defendants") move to compel this entire dispute to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 and file this brief in support of Defendants' Motion to Compel Arbitration based upon Plaintiff's First Amended Complaint.

### I.
### SUMMARY OF ARGUMENT

This lawsuit arises from Plaintiff Inga Dow's ownership of three Keller Williams® real estate brokerage franchises ("Market Centers"). As set forth in her three separate License Agreements that she entered with KWRI, Dow is an independent business owner and independent contractor, not an employee. Each of those License Agreements contain an arbitration requirement.

Dow's claims as they relate to KWRI (and others who were or are affiliated with KWRI) are a dispute between a franchisor and franchisee. Each of Dow's various theories of relief—in addition to being exceptionally time barred or failing to state a claim on the merits—relate directly

---
**DEFENDANTS' KELLER WILLIAMS REALTY, INC. AND GARY KELLER'S
BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION BASED UPON FIRST
AMENDED COMPLAINT**          Page 1

or indirectly to License Agreements that she entered with KWRI. For example, in her First Amended Complaint, Dow sues for breach of the License Agreements and, through various other legal claims and causes of action, asks the Court to determine rights pursuant to those agreements (*e.g.*, her right to renewal of the License Agreements, ability to appoint an operating principal or participate in a "legacy program," etc.). Dow even asks the Court to declare that one or more defendants are employers, a determination of which will necessarily involve an interpretation of the License Agreements, which specifically state that she is an independent contractor. Because this dispute falls squarely within the scope of the arbitration clauses in the License Agreements, Defendants move to compel arbitration.

## II.
## BACKGROUND

Dow owns three Keller Williams Market Centers pursuant to Market Center License Agreements between KWRI: Fort Worth RE, Ltd.; Johnson County RE, Ltd.; and Dow WFW RE, Inc., (collectively the "License Agreements," individually the "Fort Worth License Agreement," "Johnson County License Agreement," and "Dow WFW License Agreement"). Each License Agreement has a clear and unambiguous arbitration clause.

On March 20, 2007, Dow signed the Fort Worth License Agreement. Exhibit A, App. 1-102. The Fort Worth License Agreement contains an arbitration clause that provides in relevant part, "If the parties . . . cannot fully resolve and settle a Dispute through mediation . . . all unresolved issues involved in the Dispute . . . shall be submitted to binding arbitration." Exhibit A, ¶ 19.03, App. 55-56. The Fort Worth License Agreement defines a "Dispute" as "any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement or that concerns the relationship created by this Agreement." Exhibit A, ¶ 19.02(a), App. 55. The Fort

Worth License Agreement also contains an Acknowledgment provision that states: "Licensee [Dow] acknowledges that it has read and understands this Agreement . . . and other agreements relating hereto, and that Company has accorded Licensee ample time and opportunity to consult with advisors of Licensee's own choosing about the potential benefits and risks of entering into this Agreement." Exhibit A, ¶ 20.01(c), App. 58.

On March 29, 2012, Dow signed the Johnson County License Agreement. Exhibit B, App. 103-202. The Johnson County License Agreement also has an arbitration clause that provides in relevant part, "If the parties . . . cannot fully resolve and settle a Dispute through mediation . . . all unresolved issues involved in the Dispute . . . shall be submitted to binding arbitration." Exhibit B, ¶ 20.03, App. 174-175. The Johnson County License Agreement defines a "Dispute" as "any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement or that concerns the relationship created by this Agreement." Exhibit B, ¶ 20.02(a), App. 173-174. The Johnson County License Agreement also contained an Acknowledgment provision that, "Licensee, each Controlling Principal and each Licensee's Principal acknowledge that they have read and understand this Agreement . . . and other agreements relating hereto, and that Company has accorded Licensee . . . ample time and opportunity to consult with advisors of their own choosing about the potential benefits and risks of entering into this Agreement." Exhibit B, ¶ 21.01(d), App. 177.

On March 2, 2017, Dow signed the Dow WFW License Agreement. Exhibit C, App. 203-298. The Dow WFW License Agreement likewise has an arbitration clause that provides in part, "If the parties . . . cannot fully resolve and settle a Dispute through mediation . . . all unresolved issues involved in the Dispute . . . shall be submitted to binding arbitration." Exhibit C, ¶ 20.03, App. 272. The Dow WFW License Agreement defines a "Dispute" as "any claim, controversy or

dispute (a 'Dispute') that arises under or in relation to this Agreement or arises between or among any member of Licensee's Group and Company, its Affiliates, Regional Representatives, Successors and Assigns and their Respective Directors, officers, shareholders, members, managers, partners, attorneys, servants, employees, associates, independent contractors, agents, Regional Representatives, and representatives." Exhibit C, ¶ 20.02(a), App. 271. The Dow WFW License Agreement also contained an Acknowledgment provision that, "Licensee, each Controlling Principal and each Licensee's Principal acknowledge that they have read and understand this Agreement . . . and other agreements relating hereto, and that Company has accorded Licensee . . . ample time and opportunity to consult with advisors of their own choosing about the potential benefits and risks of entering into this Agreement." Exhibit C, ¶ 21.01(d), App. 275.

Dow initialed every page of these License Agreements—including each page with the arbitration provisions—and signed the License Agreements multiple times in multiple locations within the document acknowledging that she received and understood the terms of the License Agreements.

## III.
## ARGUMENT AND AUTHORITIES

### A. Legal Standards.

The Federal Arbitration Act ("FAA") permits a party to move to compel arbitration when a party to a valid arbitration agreement refuses to arbitrate. *Am. Bankers Ins. Co. of Fla. v. Inman,* 436 F.3d 493 (5th Cir. 2006) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991)); 9 U.S.C. §§ 1 *et seq.* When ruling on a motion to compel, courts must first determine if the dispute is arbitrable. *Papalote Creek II, L.L.C., v. Lower Colorado River Auth.,* 918 F.3d 450,

454 (5th Cir. 2019). The Fifth Circuit explained that this question requires the trial court to decide if "(1) there is a valid agreement to arbitrate between the parties; and (2) the dispute in question falls within the scope of that arbitration agreement." *Gross v. GGNSC Southaven, L.L.C.,* 817 F.3d 169, 176 (5th Cir. 2016) (quoting *Tittle v. Enron Corp.,* 463 F.3d 410, 418 (5th Cir. 2006)). If an arbitrable dispute exists, the FAA mandates that the Court direct parties to proceed to arbitration on issues as to which an arbitration agreement exists. *See* 9 U.S.C. §§ 3, 4.

1. **Dow Admits There is a Valid Arbitration Agreement between Herself and KWRI.**

In Dow's First Amended Complaint, she has amended her allegations to include a breach of contract claim solely against KWRI. In that Count, Dow alleges that KWRI and Dow entered a contract for KWRI to "provide her with a Franchise Agreement, under which she could operate her Market Centers, including renewals of such agreement, if Plaintiff fulfilled the condition precedent of acting as the OP for the Market Centers. Plaintiff acted, and continues to act to this day, as the OP of her Market Centers . . ." [Dkt. 53-1, ¶ 4.59]. Dow has an additional or alternative argument that there may have been a "quasi contract" involved here as she alleges that "[t]o the extent that the promise made by KWRI to Plaintiff to franchise to Plaintiff, and continue to renew such Franchise Agreement, so long as Plaintiff fulfilled the condition precedent of acting as the OP for the Market Centers . . . then its promise is a contracted implied-in-law or 'quasi-contract.'" [Dkt. 53-1, ¶ 4.61]. Thus, Dow's Amended Complaint—on its face—admits that these License Agreements are valid and binding.[1]

---

[1] Dow appears to claim, in a footnote, that KWRI breached its agreement and therefore there is not a valid agreement to arbitrate. Specifically, Dow argues that "KWRI is in breach of its agreement to renew Plaintiff's Franchise Agreement, despite her continuing to operate as OP, such cannot form the basis or support KWRI's request to compel arbitration under such an agreement to which it is in breach" [Dkt. 53-1, ¶ 4.59, n. 39]. It is settled, however, that when a contractual defense goes to the entirety of an agreement that contains an arbitration clause, the entire dispute must be arbitrated. *See In re FirstMerit Bank, N.S.*, 52 S.W.3d 749, 756 (Tex. 2002).

**2. Dow's Claims Fall within the Scope of the Arbitration Clauses in the License Agreements.**

There is a strong presumption that arbitration clauses cover disputes between parties, and courts resolve doubts concerning the scope of an arbitration agreement in favor of arbitration. *Pennzoil Exploration & Prod. Co. v. Ramco Energy,* 139 F.3d 1061, 1067 (5th Cir. 1998) (holding that non-signatory could compel arbitration against signatory plaintiff). "Arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* at 1067 (citing *Neal v. Hardee's Food Systems, Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Further, when determining the scope of the arbitration clause, "the court considers the language of the agreement; if broad language is used, then arbitration should be compelled, and any disagreement over its scope should be resolved by the arbitrator." *Marciel v. J&S, LLC*, No. 1:13-CV-536-LY, 2013 U.S. Dist. LEXIS 195710, *8-9 (W.D. Tex. Nov. 5, 2013) ("Whenever the scope of an arbitration clause is debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration."), App. 317-321. "Where the arbitration clause is broad, it is only necessary that the dispute touch matters covered by the agreement to arbitrate." *Machesky v. United Recovery Sys., LP*, 2016 U.S. Dist. LEXIS 179520, at *1 (citing *Pennzoil,* 139 F.3d at 1068)), App. 314-316.

The arbitration clauses involved here are broadly worded. As set forth above, a "Dispute" under the Fort Worth License Agreement and the Johnson County License Agreement includes "any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement

or that concerns the relationship created by this Agreement." Exhibit A, ¶ 19.02(a), App. 55; Exhibit B, ¶ 20.02(a), App. 173-174. A "Dispute" under the Dow WFW License Agreement includes "any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement or arises between or among any member of Licensee's Group and Company, its Affiliates, Regional Representatives, Successors and Assigns and their Respective Directors, officers, shareholders, members, managers, partners, attorneys, servants, employees, associates, independent contractors, agents, Regional Representatives, and representatives." Exhibit C, ¶ 20.02(a), App. 271-272. Given how broadly the term "Dispute" is defined, the clauses clearly favor arbitration. *Marciel*, No. 1:13-CV-536-LY, 2013 U.S. Dist. LEXIS *8-9, (App. 317-321).

In this case, Dow alleges disputes arising from her relationship with KWRI and others who were or are affiliated with KWRI. For example, her claim against John Davis relates back to conduct she alleges occurred while he was employed with KWRI, her relationship with KWRI exists only by virtue of the License Agreements, and her claims are within the scope of the arbitration clauses in the License Agreements, as noted above. Additionally, Dow alleges that other defendants took actions that interfered with her KWRI franchises and matters addressed in the License Agreements, such as the operating principal for her businesses. Dow also claims that one or more defendants have interfered with her ability to have the License Agreements renewed for another term (v. month to month). As such, her claims against all defendants relate to the License Agreements and are directly within the scope of the arbitration clauses, making this an arbitrable dispute.

    3. **Dow's Claims against KWRI and Keller Are Intertwined with Her Claims against All Defendants.**

For the same reasons articulated above, although certain defendants are not parties to the License Agreements, KWRI and Keller move to compel arbitration of Dow's claims against all defendants because (i) the claims relate back to conduct allegedly undertaken during the time defendant Davis was employed with KWRI (and her relationship with KWRI is established through the License Agreements) and/or (ii) the claims against co-defendants are intertwined with—and dependent upon—the License Agreements and the arbitration agreement therein. Indeed, in these circumstances, the doctrine of equitable applies and provides that a non-signatory to an arbitration agreement be compelled to arbitration. *See Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).

> [A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *When . . . a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.*

*Id.* (emphasis added) ("The linchpin for equitable estoppel is equity -- fairness. For the case at hand, to not apply this intertwined-claims basis to compel arbitration would fly in the face of fairness."); *see also Coronado v. D N.W. Hous., Inc.*, 2015 U.S. Dist. LEXIS 134299, *7 (S.D. Tex. Sept. 30, 2015) (granting non-signatories' motion to compel arbitration, under principles of equitable estoppel, as to employee who signed an enforceable arbitration agreement), App. 299-313; *Wirth v. Ziba Enters., Inc.,* 2013 U.S. Dist. LEXIS 127217, at *5 (N.D. Tex. Sept. 6, 2013) (holding that non-signatory could, under principles of equitable estoppel, compel employees to arbitrate based on employees' agreements with employer), App. 322-327.

As noted, Dow's claims against non-signatory defendants Garrett, Osborn, Davis, and GO Management, LLC directly reference and rely upon the existence of the License Agreements and the obligations contained therein. Specifically, Dow claims that her Market Centers are "subject to extensive oversight and control by both KWRI and Regional Office staff . . . through the terms of the [License] Agreement and KWRI's rules and procedures." [Dkt. 1, ¶ 3.2]. In other words, Dow claims that the License Agreements gave other defendants, in addition to KWRI, certain control or influence over the Market Centers such that they should be liable for her complaints. Further, her allegations against Davis relate to a time frame when she claims he was employed by KWRI. Thus, her claims "raise[] allegations of substantially interdependent and concerted misconduct by both [a] nonsignatory and one or more of the signatories to the contract," and the doctrine of equitable estoppel applies making arbitration appropriate as to Dow and all defendants. *See Grigson,* 210 F.3d at 526 (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999)) (affirming that defendants, who were nonsignatories, could enforce arbitration agreement under equitable estoppel doctrine).

### B. **Dow is Bound by Her Consent to Arbitration.**

Dow has three separate Market Centers that each have separate License Agreements with arbitration clauses. Further, each License Agreement grants rights and obligations for a specific term and when the term expires, the license agreement must be renewed. After Dow entered into her first License Agreement—with the knowledge that disputes were subject to an arbitration provision—she executed two subsequent License Agreements that also contained arbitration provisions, which demonstrates her valid consent to be bound by those terms as a matter of law. *Cf. In re Halliburton Co.,* 80 S.W.3d 566, 568-69 (Tex. 2002) (holding that when an employer notifies an at-will employee of an arbitration agreement and informs the employee that continuing

to work after notice constitutes the employee's acceptance of the arbitration agreement, the employee's conduct in continuing to work is acceptance of the terms of the agreement as a matter of law).

Here, Dow accessed the three License Agreements and associated exhibits, signed every single page, and submitted them to KWRI. Dow would not have been allowed to have a franchise with KWRI without first executing the License Agreement. Further, Dow initialed on the "Acknowledgements" page of the License Agreement acknowledging that she received a copy of the License Agreement, that she read and understood it, and that she had ample time and opportunity to consult with advisors of their own choosing about the potential risks and benefits of entering into the License Agreement. Exhibit A, ¶ 20.01(c), App. 58; Exhibit B, ¶ 21.01(d), App. 177; Exhibit C, ¶ 21.01(d), App. 275. When Dow acquired her first Market Center and subsequently opened two more, she agreed three times to be bound by the arbitration provisions as a matter of law.

Where, as here, the parties have agreed to resolve all disputes through binding arbitration, such agreements are fully enforceable. Arbitration is the elected and required forum for resolving Dow's claims, which are fully within the scope of the License Agreements. Accordingly, Defendants ask the Court to compel arbitration of Dow's claims against all Defendants and dismiss this action.

## IV.
## CONCLUSION

For the reasons set forth above, Defendants KWRI and Keller respectfully request that this motion be granted and that the Court compel arbitration of this dispute.

Respectfully submitted,

By: */s/ Kristin Bauer*
    Kristin L. Bauer
    Texas Bar No. 24006813
    Kristin.Bauer@jacksonlewis.com
    Claire L. Cook
    Texas Bar No. 24086220
    Claire.Cook@jacksonlewis.com
    JACKSON LEWIS P.C.
    500 N. Akard, Suite 2500
    Dallas, Texas 75201
    PH: (214) 520-2400
    FX: (214) 520-2008

**ATTORNEYS FOR DEFENDANTS KELLER WILLIAMS REALTY, INC. AND GARY KELLER**

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on April 12, 2022.

| | | |
|---|---|---|
| Michael Y. Kim<br>Ericha Ramsey Brown<br>Monica L. Narvaez<br>Eduardo R. Garza<br>THE MICHAEL KIM LAW FIRM, PLLC<br>4236 W. Lovers Lane<br>Dallas, Texas 75209<br>mkim@mkimlegal.com<br>erbrown@mkimlegal.com<br>mnarvaez@mkimlegal.com<br>egarza@mkimlegal.com<br><br>**Attorneys for Plaintiff** | James T. Drakeley<br>Laurie N. Patton<br>SPENCER FANE LLP<br>5700 Granite Parkway, Ste. 650<br>Plano, TX 75024<br>jdrakeley@spencerfane.com<br>lpatton@spencerfane.com<br><br>**Attorneys for Defendant John Davis** | A. Boone Almanza<br>Tanya Robinson<br>ALMANZA, BLACKBURN, DICKIE & MITCHELL LLP<br>2301 S. Capital of Texas Hwy., Bldg. H<br>Austin, Texas 78746<br> TRobinson@abdmlaw.com<br>BAlmanza@abdmlaw.com<br><br>**Attorneys For Defendants Go Management LLC, David Osborn, And Smokey Garrett** |

/s/ *Kristin Bauer*
    Kristin L. Bauer

---

**DEFENDANTS' KELLER WILLIAMS REALTY, INC. AND GARY KELLER'S BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION BASED UPON FIRST AMENDED COMPLAINT**                                                                                                         Page 11