UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| INGA DOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| KELLER WILLIAMS REALTY, INC. | § | CIVIL ACTION NO. 4:21-CV-01209-P |
| JOHN DAVIS, GO MANAGEMENT, LLC, | § | |
| DAVID OSBORN, SMOKEY GARRETT, | § | |
| AND GARY KELLER, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE
TO DEFENDANTS KELLER WILLIAMS REALTY, INC. AND
GARY KELLER'S MOTION TO DISMISS PLAINTIFF'S
<u>FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)</u>**

MICHAEL Y. KIM                    24039960
ERICHA RAMSEY BROWN        24051952
MONICA L. NARVAEZ              24088113
EDUARDO R. GARZA               24120843

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile
mkim@mkimlegal.com
erbrown@mkimlegal.com
mnarvaez@mkimlegal.com
egarza@mkimlegal.com

ATTORNEYS FOR PLAINTIFF

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................i

TABLE OF AUTHORITIES......................................................................................................ii

    I.      SUMMARY...................................................................................................1

    II.    BACKGROUND FACTS...............................................................................2

    III.   ARGUMENTS AND AUTHORITIES ..........................................................4

          A.      Defendants' Motion to Dismiss is barred under Rule 12 ..................................4

          B.      Standard of Review .........................................................................5

          C.      Plaintiff's statutory claims are not barred as
Defendants are an employer ......................................................................7

          D.      Plaintiff's statutory claims are not barred by the statute of limitations...........19

          E.      Plaintiff's tortious interference claims
are not barred by the statute of limitations .......................................................21

          F.      Plaintiff's breach of contract claims does not fail ...........................................23

          G.      Plaintiff maintains a valid claim for Declaratory Judgment............................24

PRAYER ....................................................................................................................25

CERTIFICATE OF SERVICE....................................................................................27

## TABLE OF AUTHORITIES

## CASES

*Adler v. Beverly Hills Hosp.*,
   594 S.W.2d 153 (Tex. App.—Dallas 1980, no writ)...............................................22

*Albany Ins. Co. v. Almacenadora Somex, S.A.*,
   5 F.3d 907 (5th Cir. 1993) ..............................................................................................5

*Aspenwood Apartment Corp. v. Coinmach, Inc.*,
   349 S.W.3d 621 (Tex. App. –Houston [1st Dist.] 2011),
   *aff'd in part, rev'd in part sub nom.*, 417 S.W.3d 909 (Tex. 2013)...........................22

*Badii v. Rick's Cabaret Intern., Inc.*,
   2014 WL 550593 (N.D. Tex. Feb. 11, 2014) ...............................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................5, 6, 7, 19

*Blanchet v. Chevron/Texaco Corp.*,
   368 F. Supp. 2d 589 (E.D. Tex. 2004).........................................................................20

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) .......................................................................................16

*Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*,
   5 F.3d 117 (5th Cir. 1993) ..................................................................................7, 9, 18

*Domino's Pizza, L.L.C. v. Reddy*,
   2015 WL 1247349 (Tex. App.—Beaumont Mar. 19, 2015, pet. denied)..................17

*E.E.O.C. v. S&B Industry, Inc.*,
   2016 WL 7178969 (N.D. Tex. Dec. 8, 2016)................................................................8

*Exxon Corp. v. Tidwell*,
   867 S.W.2d 19 (Tex. 1993) .........................................................................................10

*Farlow v. Harris Methodist Hosp.*,
   284 S.W.3d 903 (Tex. 2009) ...........................................................................10, 11, 17

*Jones v. Greninger*,
   188 F.3d 322 (5th Cir. 1999) .........................................................................................6

*Lockard v. Pizza Hut, Inc.*,
   162 F.3d 1062 (10th Cir. 1998) .....................................................................................9

*Lonergan v. A.J.'s Wrecker Service of Dallas, Inc.*,
   1999 WL 462333 (N.D. Tex. July 6, 1999)............................................................23

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .........................................................................5, 19

*Lowrey v. Texas A&M Univ. Sys.*,
   117 F.3d 242 (5th Cir. 1997) ..................................................................................5

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ..................................................................................6

*Muhammad v. Dallas Cty. Cmty. Supervision & Corr. Dep't*,
   479 F.3d 377 (5th Cir. 2007) ...........................................................................7, 8, 9

*National R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ...............................................................................................20

*Neitzke v. Williams*,
   490 U.S. 319 (1989) .................................................................................................6

*Nelson v. Sherron Assocs., Inc.*,
   2015 WL 3504924 (N.D. Tex. June 3, 2015) (mem. op.) ...........................7, 8, 9, 18

*Norris v. Hearst Trust*,
   500 F.3d 454 (5th Cir. 2007) ................................................................................16

*Ogbogu v. Navin*,
   2019 WL 4307011 (N.D. Tex. Aug. 16, 2019) ......................................................16

*Priester v. Lowndes County*,
   354 F.3d 414 (5th Cir. 2004) .............................................................................5, 6

*Provident Life & Accident Ins. Co. v. Knott*,
   128 S.W.3d 211 (Tex. 2003) ..................................................................................21

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ..................................................................................6

*Robinson v. TCI/US W. Commc'ns Inc.*,
   117 F.3d 900 (5th Cir. 1997) ..................................................................................6

*Shaw v. Fanning, Harper & Martinson*,
   1997 WL 102483 (N.D. Tex. Mar. 3, 1997)............................................................9

*State Farm Mut. Auto. Ins. Co. v. Traver,*
    980 S.W.2d 625 (Tex. 1998) .................................................................................17

*Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,*
    219 S.W.3d 563 (Tex. App. –Austin 2007, pet. denied) .........................................22

*Twyman v. Twyman,*
    790 S.W.2d 819 (Tex. App.—Austin 1990, writ granted),
    *rev'd on other grounds*, 855 S.W.2d 619 (Tex. 1993) ...........................................22

*Vaught v. Showa Denko K.K.,*
    107 F.3d 1137 (5th Cir. 1997) ...............................................................................21

*Vero Blue Farms USA, Inc. v. Wulf,*
    465 F. Supp. 3d 633 (N.D. Tex. 2020) .....................................................................5

## STATUTES

28 U.S.C. § 2201 .......................................................................................................25

42 U.S.C. § 12111(5)(A) ..............................................................................................8

42 U.S.C.A. § 2000e(b) ...............................................................................................8

Tex. Labor Code § 21.0022(b) ....................................................................................9

Tex. Labor Code § 21.0022(c) ...............................................................................9, 10

## RULES

Fed. R. Civ. P. 12(b)(6) ....................................................................................5, 11, 23

Fed. R. Civ. P. 12(g)(2) ...............................................................................................4

## I.   <u>SUMMARY</u>

1.1     Plaintiff initiated this proceeding on November 2, 2021, asserting various claims relating to sexual harassment, sexual misconduct, hostile work environment, and retaliation she suffered at the hands of the named Defendants in this lawsuit (the "Original Complaint") [Doc. No. 1].

1.2     On or about March 23, 2022, Plaintiff filed a Motion for Leave to File Plaintiff's First Amended Complaint [Doc. #53], which attached Plaintiff's First Amended Complaint as <u>Exhibit A</u> thereto [Doc. #53-1]. Plaintiff's Amended Complaint (the "Amended Complaint") was filed by the Court on March 29, 2022 [Doc. #63].

1.3     On April 12, 2022, Defendants Keller Williams Realty, Inc. ("KWRI") and Gary Keller (collectively, "Defendants") filed their Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to FRCP 12(b)(6) (the "Motion to Dismiss"), and brief in support (the "Dismissal Brief"), with regard to the claims asserted against Defendants in the Amended Complaint.

1.4     As demonstrated in the Amended Complaint, Plaintiff has been an employee of KWRI, governed by the Regional Office, which is operated by Mr. Osborn and Mr. Garrett as GO Management LLC ("GOM"). Plaintiff is subject to extensive control by Defendants, GOM, Osborn and Garrett, and has been throughout the entire duration of her employment.

1.5     During her employment, Plaintiff endured constant, severe, and pervasive sexual harassment, sexual misconduct, a hostile work environment, and retaliation, which continues to this date. As such, Plaintiff's claims are timely, and the factual information provided by Plaintiff in the Amended Complaint not only serves to support her claims, but also as permissible and relevant background information to give context to the claims asserted in this lawsuit.

1.6     In the Motion to Dismiss and the Dismissal Brief, Defendants attempt to dismiss each cause of action asserted by Plaintiff against them. As demonstrated herein, Defendants failed to demonstrate and/or establish that dismissal of Plaintiff's claims is proper, and as such, the Motion to Dismiss should be denied, in all things.

## II.     **BACKGROUND FACTS**[1]

2.1     Plaintiff has been a member of the Keller Williams Realty, Inc. ("KWRI") ecosystem, since 1992, and since such time, has been bound to operate and/or act in conjunction with the KWRI standards. *See* the Amended Complaint, ¶¶ 3.1-3.17. In this regard, Plaintiff has been treated and has considered herself an employee of KWRI since the time her relationship with KWRI began. *Id.*

2.2     KWRI is a real estate company with offices throughout the United States and Canada, that operates through market centers specifically approved by KWRI. *See* the Amended Complaint, ¶¶ 3.1-3.2. Each Market Center is subject to extensive oversight and control by KWRI and a KWRI Regional Office, which in this instance is Defendant GOM.[2] *Id.* at ¶¶ 3.2, 3.6. For example, each Market Center, and Regional Office, is <u>required to operate</u> subject to a broad set of operating policies, procedures, and standards, all created and maintained by KWRI. *See id.* at ¶ 3.5.

2.3     Additionally, KWRI retains the right to "adjust the boundaries of the Awarded Area at any time," in the sole "business judgment" of KWRI, and Plaintiff may not relocate without express consent from KWRI. *Id.* at ¶ 3.6. Plaintiff <u>must</u> also <u>obtain approval</u> from the directors and/or owners of a Region (i.e., GOM, Osborn and Garrett), and/or from KWRI, <u>before</u> finalizing

---

[1] To the extent necessary, Plaintiff hereby incorporates by this specific reference any defined term within the Amended Complaint, as if the same was set forth herein.

[2] GOM is owned and operated by David Osborn and Smokey Garrett.

various imperative operational decisions, such as <u>expansion, sales, and budgeting</u>. *Id*. KWRI also <u>requires</u> Plaintiff, as well as her superiors (i.e., GOM, Osborn and Garrett), to attend <u>weekly</u> meetings and trainings, as well as numerous other training seminars throughout the year, and an annual convention. *See id*. at ¶¶ 3.12, 3.14. Notably, a Market Center owner (i.e., Plaintiff) <u>must</u> also <u>seek approval</u> from its Regional Office (in this instance GOM, Osborn and Garrett), and KWRI, <u>before hiring</u> managerial level staff. *Id*. at 3.14.

2.4    One of Plaintiff's Regional superiors and/supervisors, Osborn, has held various high-level positions, all of which were superior to, and supervisory over, Plaintiff, and which <u>gave him authority to hire, promote, and/or remove individuals</u> for certain roles on behalf of KWRI. *See id*. at ¶¶ 3.31, 3.27, n.15, 3.35, 3.39, 3.64, 3.72-3.74, 3.79-3/80, 3.84. Likewise, Garrett also maintains a superior and supervisory role over Plaintiff. *Id*. at ¶¶ 3.64, 3.68, 3.72-3.74, 3.79-3.80, 3.84.

2.5    During her tenure with KWRI, which continues to date, Plaintiff has witnessed and endured a company culture that objectified women and required, encouraged, and/or turned a blind eye to such objectification and harassment. *See* the Amended Complaint, ¶¶ 3.18-3.97.

2.6    In or around 1998, Plaintiff's reality at KWRI began to change, and she began to physically, emotionally, and psychologically endure the effects of a culture that objectified and demeaned women such as herself. *Id*. at ¶ 3.20-3.97.

2.7    Plaintiff had a long-lasting professional and personal relationship, and purported friendship, with Defendants Osborn and Davis. In that regard, it took her years to understand, acknowledge, and unpack the emotional trauma, abuse, and harassment she had endured, and which had been ignored and/or encouraged by the defendants in this lawsuit. *See id*. at ¶¶ 3.21-3.97; *see also* Joint Status Report, p.3 [Doc. #20].

2.8     Not only was Plaintiff subjected to sexual abuse, misconduct, harassment, and retaliation, but her businesses were affected as a result of such conduct. *See id*. at ¶¶ 3.21-3.101. Despite various reports to the corporate office and/or KWRI executives and/or representatives, to date, Defendants have failed to address and/or rectify the misconduct, harassment, and retaliation that Plaintiff has suffered as a result of KWRI's representatives, executives, officers, and/or employees. *Id*. at ¶¶ 3.26, 3.87-3.89.

2.9     In this regard, regardless of the now-perceived understanding of the sexual abuse, harassment, and misconduct endured, at the time the events were occurring, Plaintiff lacked comprehension that the conduct she was facing constituted sexual abuse, misconduct and/or harassment based upon the fact that, in essence, she had been groomed and/or indoctrinated by the cultural environment and actions of Defendants. *See id*. at ¶¶ 3.29-3.31, 3.33-3.34, 3.36, 3.41, 3.43, 3.71, 3.101.

## III.     ARGUMENTS & AUTHORITIES

### A.     Defendants' Motion to Dismiss is barred under Rule 12[3]

3.1 FED. R. CIV. P. 12(g)(2) states:

[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion.

3.2     If a party seeks dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b), that party <u>must include</u> in such motion any other defense or objection then available

---

[3] This objection is brought in the alternative to the objection and relief sought by Plaintiff in her Response to Defendants Keller Williams Realty, Inc. and Gary Keller's Motion to Strike Plaintiff's First Amended Complaint Subject to the Motion to Compel Arbitration, and Brief in Support [Doc. #107-108], which is incorporated herein by this specific reference. Accordingly, if the Court does not strike Defendants' pending FED. R. CIV. P. 12(f) Motion to Strike [Doc. #78-79], then Plaintiff brings the following objection for determination by the Court, as Defendants' Motion to Dismiss [Doc. #81-82] was not brought within the same motion as Defendants' challenge pursuant to FED. R. CIV. P. 12(f), and as such, the Motion to Dismiss constitutes a subsequent, and separate, FED. R. CIV. P. 12 motion, which is barred by law. *See infra*, ¶ 3.5.

which Rule 12 permits to be raised by motion. *Vero Blue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 648 (N.D. Tex. 2020) (quoting *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993)). If the party omits such defense or objection, Rule 12(g) precludes them from making a further motion based on the omitted defense or objection. *Id*. Accordingly, all available Rule 12 motions must be brought simultaneously in <u>one motion</u>, or else such is waived. *See Albany Ins. Co.*, 5 F.3d at 909-10 (holding that all applicable Rule 12 motions must be brought at the same time, in one motion, or else such will be waived).

3.3     In the present case, on April 12, 2022, Defendants filed their Motion to Strike Plaintiff's First Amended Complaint Subject to the Motion to Compel Arbitration (the "Motion to Strike"), identified in the Court's docket as Document Nos. 78-79. Subsequently, and by separate motion, later on April 12, 2022, Defendants filed the Motion to Dismiss, which is identified in the Court's docket as Document Nos. 81-83. Accordingly, the Motion to Strike was filed <u>first in time</u>, thus barring the consideration of the Motion to Dismiss pursuant to FED. R. CIV. P. 12., and the case law outlined *supra*, ¶ 3.5.

**B.     Standard of Review**

3.4     "A motion to dismiss under Rule 12(b)(6) is '<u>viewed with disfavor and is rarely granted</u>.'" *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)) (emphasis added). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). "The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true." *Id*.; *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232, 244 (5th Cir. 2009) (reiterating that the court "must accept as true the well-pleaded factual allegations in the complaint

during the pleadings stage" and "must also draw all reasonable inferences in the plaintiff's favor"); *cf. Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."). The Court "'must accept the plaintiff's uncontroverted allegations, and resolve in [plaintiff's] favor all conflicts between the facts contained in the parties' affidavits and other documentation.'" *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002)).

3.5    "The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether he is entitled to offer evidence to support his claim." *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). "Therefore, th[e] court will not dismiss a plaintiff's claim, 'unless the plaintiff will not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in his complaint.'" *Id*. (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Dismissal is proper only when 'it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief.'" *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997) (citations omitted).

3.6    Moreover, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556. "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *See Twombly*, 550 U.S. at 563 n.8. Moreover, a complaint need not set forth all the facts upon which a claim is based, and instead

a statement that is sufficient to give the defendant notice of what the claim is, and upon what it is based, is sufficient. *Twombly*, 550 U.S. at 545.

**C.     Plaintiff's statutory claims are not barred as Defendants are an employer**

3.7     Defendants contend that Plaintiff cannot establish that KWRI is an "employer," and thus Plaintiff's statutory claims should be dismissed. *See* the Dismissal Brief, pp.5-8. Importantly, the law at this stage does not require Plaintiff to prove as a matter of law that KWRI is Plaintiff's employer, but instead, Plaintiff must only demonstrate, <u>by inference</u>, that KWRI <u>could be</u> Plaintiff's "employer."

3.8     This District previously held that

> A two-step process is required to determine whether a defendant is an "employer" under Title VII. "First, the defendant must fall within the statutory definition. Second, there must be an employment relationship between the plaintiff and defendant." Because, as discussed below, both of these steps require factually-intensive inquiries, the Court concludes <u>that it would be inappropriate to decide whether Sherron was Plaintiff's "employer" under Title VII until both parties have had the opportunity to conduct discovery on the issue</u>. Instead, the Court will merely review Plaintiff's complaint to determine if it states sufficient facts from which the Court can <u>reasonably infer</u> that Sherron was Plaintiff's employer.

*Nelson v. Sherron Assocs., Inc.*, 2015 WL 3504924, at *4 (N.D. Tex. June 3, 2015) (mem. op.) (citing *Deal v. State Farm Cnty. Mut. Ins. Co. of Texas*, 5 F.3d 117, 118 n.2 (5th Cir. 1993); *see also Muhammad v. Dallas Cty. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 382 (5th Cir. 2007) (finding this test as "necessarily <u>a fact-specific inquiry</u> and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship"). Accordingly, at this stage, in order to defeat Defendants' challenge, Plaintiff must only demonstrate facts which <u>reasonably infer that an employment relationship existed</u>. *Id*.

3.9     Moreover, under Title VII,

> [t]he term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, <u>and any agent of such a person</u>, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C.A. § 2000e(b) (emphasis added).[4] The definition of "employer" under Title VII provides no exception for franchisors. *Id.* Thus, KWRI unequivocally meets the definition of employer. As such, we turn our attention to the employment relationship between KWRI and Plaintiff.

> To determine whether an employment relationship exists within the meaning of Title VII, "we apply a 'hybrid economic realities/common law control test.'" The most important component of this test is "[t]he right to control [the] employee's conduct." "When examining the control component, we have focused on whether the alleged employer has the right" to hire, fire, supervise, and set the work schedule of the employee. "State law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired." The economic realities component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment."

*Muhammad*, 479 F.3d at 380; *see also Nelson*, 2015 WL 3504924, at *4 ("To determine whether an employment relationship exists between the plaintiff, this circuit applies a hybrid test that combines the elements of the economic realities test and common law control tests."). The Fifth Circuit elaborated that "'[a] plaintiff's status as an employee under Title VII ... is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and <u>the particular circumstances of the case at hand</u>.'" *Muhammad*, 479 F.3d at 382 (emphasis added).[5]

---

[4] The ADA definition follows that of Title VII. *See* 42 U.S.C. § 12111(5)(A).
[5] This same standard and test is applied with regard to the ADA, as well. *See E.E.O.C. v. S&B Industry, Inc.*, 2016 WL 7178969, at *4 (N.D. Tex. Dec. 8, 2016).

3.10     Further, Title VII also allows for an "employer" to be liable for the actions of its agent. *See Deal*, 5. F.3d at 119 (agreeing that an agent for purposes of Title VII is a supervisor or managerial employee to whom employment decisions have been delegated by an employer). "The entire purpose of the 'agent' provision of Title VII was to incorporate principles of respondeat superior into the statutory framework." *Shaw v. Fanning, Harper & Martinson*, 1997 WL 102483, at \*2 (N.D. Tex. Mar. 3, 1997). In this same vein, the Northern District has also found that employers who condone or tolerate harassing environments should be found liable. *See Badii v. Rick's Cabaret Intern., Inc.*, 2014 WL 550593, at \*23 (N.D. Tex. Feb. 11, 2014) (citing e.g., *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998) ("an employer who condones or tolerates the creation of such an environment [permeated with discriminatory intimidation, ridicule, and insult] should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment.")). "The focus of the inquiry when determining a hostile work environment is therefore on the employer's control of the conditions under which the harassment occurred." *See Badii*, 2014 WL 550593, at \*23.[6]

3.11     As to Plaintiff's claims under Chapter 21 of the Texas Labor Code, while TEX. LABOR CODE § 21.0022(b) provides an exclusion, stating "a franchisor is not considered to be an employer of: (1) a franchisee; or (2) a franchisee's employees." TEX. LABOR CODE § 21.0022(b). However, TEX. LABOR CODE § 21.0022(c) sets forth the exception to that exclusion "[w]ith respect

---

[6] Important to note is the fact that Defendants failed to cite to a single federal authority in their brief with regard to the federal application of Title VII in the determination of the existence of an employment relationship, and with regard to the standard for such inquiry at the motion to dismiss phase.  In fact, Defendants did not present a single case in support of their arguments that addressed a motion to dismiss, and instead, all supporting cases dealt with analysis at the summary judgment phase (which requires an in-depth factual review not akin to that in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)), or in a post-judgment appeal. As previously set forth, Plaintiff does not bear the burden at this stage of litigation to establish KWRI as an "employer" and the existence of an employment relationship as a matter of law. *See Nelson*, 2015 WL 3504924, at \*4 (citing *Deal*, 5 F.3d at 118 n.2); *Muhammad*, 479 F.3d at 382.

to a specific claim for relief under this chapter made by a franchisee or a franchisee's employee, this section <u>does not apply</u> to a franchisor <u>who has been found</u> by a court of competent jurisdiction in this state <u>to have exercised a type of degree of control over the franchisee or a franchisee's employees not customarily exercised by a franchisor</u> for the purpose of protecting the franchisor's trademarks and brand." Tex. Labor Code § 21.0022(c) (emphasis added). Accordingly, the existence of an employment relationship in the context of Chapter 21 of the Texas Labor also relies upon examination of the right to control. *Id*.

3.12    Pursuant to Texas law, "[w]hen determining whether a party is an employee or an independent contractor, the law focuses on the right of control over the details of the work to be performed." *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993); *see also Farlow v. Harris Methodist Hosp.*, 284 S.W.3d 903, 911 (Tex. 2009) (concluding that when determining the existence of an employee relationship, the focus is on *who* has the right to control). "The right to control is the 'supreme test' for determining whether a master-servant relationship exists." *Farlow*, 284 S.W.3d at 911.

> A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract has been modified by a subsequent agreement between the parties." *Id*. However, "[e]vidence that the parties did not intend for an independent contractor relationship <u>can come from the contract itself</u>, i.e., whether, despite the language describing the relationship as an independent contractor relationship, other contract language evidences such a right to control that the relationship is actually that of employer/employee. It can also come from <u>extrinsic evidence</u>, such as <u>instances of actual control</u> by the principal sufficient to show that the true agreement of the parties vested a right of control establishing an employment relationship.

*Id*. (citations omitted) (emphasis added).

3.13    In determining the extent of the right to control, the Court may "consider several factors: (1) the independent nature of the person's business; (2) the person's obligation to furnish

necessary tools, supplies, and materials to perform the job; (3) the right to control progress of the work; (4) the time for which the person is employed; and (5) the method of payment, whether by time or by the job." *See id*. "To trigger vicarious liability, the right to control must extend to the specific activity from which the injury arose." *Id*. at 911-12 (emphasis added).

3.14    Similar to the Federal test, at this stage in the litigation, "[t]he right to control is ordinarily a question of fact. . . ." *Id*. at 912 (emphasis added). "[I]f the controlling facts are undisputed, whether the relationship that exists is that of an employee or of an independent contractor is a question of law." *Id*. (emphasis added). In the instant matter, the controlling facts are clearly in dispute, and as such, a fact question exists, which renders dismissal at this stage improper. *See generally* the Dismissal Brief.

3.15    At the outset, it is important to note that Defendants have not cited a single authority with regard to the determination to be made at the Fed. R. Civ. P. 12(b)(6) stage, citing only cases at the summary judgment phase, or appellate phase, post-trial. *See* the Dismissal Brief, pp.5-8. The vast majority of the cases cited by Defendants not only perform a fact intensive analysis through a procedure which permits such an analysis, but they also address a franchisor's right to control in terms of negligence, premises liability, or harassment by an employee of the franchisee. The instant matter surrounds violative conduct by individuals and entities outside the control of Plaintiff (the franchisee), but within the control of the franchisor (KWRI). Such is an important distinction, as Defendants have offered no authority which addresses the "employer" issue in this context.

3.16    Defendants claim that KWRI is not an employer, and that no employment relationship exists, and cite several cases in support of this proposition; however, as noted above, none are akin to the circumstances in this case. Additionally, Defendants claim that the existence of the License Agreements solidifies Plaintiff's position as an independent contractor and that

11

Plaintiff cannot demonstrate factors which demonstrate Defendants' control of Plaintiff. *See* the Dismissal Brief, pp.5-8.  To the contrary, the Amended Complaint presents more than sufficient evidence for the Court to <u>infer</u> that KWRI was Plaintiff's "employer," and that an employment relationship existed.

       3.17    While the many cases relied upon by Defendants provide mostly singular examples of control and/or lack thereof, the Amended Complaint alone demonstrates vast examples of the extensive oversight and control KWRI maintains over the Regional Offices and Market Centers. Plaintiff provided the following examples within the Amended Complaint:

(1)    KWRI is a real estate company with offices throughout the United States and Canada, which operates through market centers <u>specifically approved</u> by KWRI;[7]

(2)    Each Market Center is subject to extensive oversight and control by KWRI and a KWRI Regional Office (GOM, Osborn, and Garrett);[8]

(3)    Each Market Center is <u>required to operate</u> subject to a broad set of operating policies, procedures, and standards, all created and maintained by KWRI and managed and enforced by the Region overseeing those Market Centers (GOM, Osborn, and Garrett);[9]

(4)    KWRI retains the right to "adjust the boundaries of the Awarded Area at any time," in the sole "business judgment" of KWRI, and Plaintiff may not relocate without <u>express consent from KWRI</u>;[10]

(5)    Plaintiff <u>must obtain approval</u> from the <u>directors and/or owners of a Region</u> (i.e., GOM, Osborn, and Garrett), <u>and/or from KWRI</u> before finalizing various operational decisions, such as expansion, sales, and setting a budget (i.e., extensive operational control);[11]

(6)    the "agents" comprising each Associate Leadership Council are <u>required to meet once per month</u>, and are involved with updating the KWRI Manual;[12]

---

[7] *See* the Amended Complaint, ¶¶ 3.1-3.2.
[8] *Id*. at ¶¶ 3.2, 3.6.
[9] *See id*. at ¶ 3.5.
[10] *Id*. at ¶ 3.6.
[11] *Id*.
[12] *See id*. at ¶ 3.9.

(7)   KWRI attempts to maintain the notion that "associates" are not employees of KWRI, but instead, employees or "independent contractors" of a Market Center; however, <u>KWRI expects</u> that its very specific methods and principles be adhered to by all;[13]

(8)   KWRI <u>requires</u> its associates take part <u>each week</u> in the many educational, support and leadership opportunities and demonstrate requirements set forth in the KWRI Manual;[14]

(9)   Each Market Center <u>is required to use</u> an employment application developed and maintained by KWRI, and <u>requires</u> each applicant to complete the <u>Keller Personality Assessment developed and maintained by KWRI</u>; which, notably, is lengthy and could subject the market centers and/or owners to liability for disparate treatment;[15]

(10)   KWRI requires market centers and/or owners to use their onboarding documentation and <u>requires</u> extensive training;[16] [17]

(11)   A Market Center owner (i.e., Plaintiff) <u>must</u> also <u>seek approval from its Regional Office</u> (GOM, Osborn, and Garrett), <u>and KWRI</u> in order <u>to hire a</u> Team Leader, Market Center Administrator, and Operating Partner ("OP");[18]

(12)   As an employee, representative, and/or executive of KWRI, Osborn had the authorization and authority through KWRI to appoint supervisory and/or managerial positions, such as regional director;[19]

(13)   Osborn, was hired as an official employee, representative, and/or executive of KWRI in 2007, as President of Core Services, and held many other supervisory positions with KWRI over the years, and continues to act as Regional Director;[20]

(14)   KWRI and the Regional Office (and owners Osborn and Garrett) possessed control over the renewal of existing market centers;[21]

---

[13] *See* the Amended Complaint, ¶ 3.11.
[14] *Id*. at ¶ 3.12.
[15] *Id*. at ¶ 3.14.
[16] *Id*.
[17] Examples of this extensive training include, but is not limited to: OP Boot Camp; Team Leader Boot Camp; Market Center financial reporting; the KWRI Family Reunion (annual convention); biannual "mastermind meetings;" MAPS coaching weekly; weekly call with the CEO of KWRI for Regional Directors, OPs, Team Leaders, and Market Center Administrators; quarterly regional meetings; weekly "regional" calls; biannual regional education; and each Market Center must purchase a copy of Gary Keller's book entitled, "*Millionaire Real Estate Agent*," as well as products offered by Keller Mortgage.
[18] *See* the Amended Complaint, ¶ 3.14.
[19] *See id*. at ¶ 3.31.
[20] *Id*. at ¶¶ 3.35, 3.68.
[21] *Id*. at ¶¶ 3.64, 3.72.

(15)    KWRI required the Regional Office (and owners Osborn and Garrett) to handle, manage, oversee, and determine approval of applications for renewal;[22]

(16)    Defendants, by and through Garrett, represented that they had the authority to force Plaintiff out;[23] and

(17)    KWRI provides manuals, software, and programs, which Plaintiff is <u>expected to use for business operations and employee relations</u>.[24]

Additionally, the 116 page KWRI *Policies and Guidelines Manual*, contains detailed guidance on all aspects of its business from how Regions and Market Centers are structured, to employee pay issues. *See* the Amended Complaint, ¶ 3.7.

    3.18    Further, the License Agreements upon which Defendants contend negate the existence of an employer relationship and affirm Plaintiff's position as an independent contractor likewise contain language which negate the fact that an independent contractor relationship was intended. Examples of this type of contravening contractual language include, but are not limited to:[25]

(1)    "Regional Representative" means the independent representative of the Company who is <u>authorized to perform certain duties on Company's behalf</u>;[26]

(2)    The Market Center <u>must have been</u> under the management and supervision of an Operating Principal and a Team Leader <u>whom the Company has unconditionally approved</u>;[27]

(3)    Licensee <u>must cooperate with</u> the Regional Representative that Company assigns to the Market Center;[28]

---

[22] *Id*. at ¶ 3.73.
[23] *Id*. at ¶ 3.84.
[24] *See id*. at ¶ 3.7.
[25] Plaintiff has cited to portions of Defendants' Appendix ("Defendants' App."); however, this list is not exhaustive of the vast provisions which demonstrate Defendants' control. Plaintiff would also show the three License Agreements contain similar provisions, and for brevity, Plaintiff cited to only one of the License Agreements for illustrative purposes.
[26] Defendants' App.214 (emphasis added).
[27] Defendants' App.219 (emphasis added).
[28] Defendants' App.221 (emphasis added).

(4)     Company shall maintain and administer the Profit-Sharing Plan;[29]

(5)     Company shall establish and maintain guidelines in the Manuals for such Local, City, Regional and International Associate Leadership Councils as Company deems appropriate from time to time;[30]

(6)     Company shall organize an annual convention. . . .  Company may <u>assess an annual sponsorship fee</u>. . . to cover the cost of the convention. Licensee <u>shall be responsible for all costs</u>. . . .;[31]

(7)     The Operating Principal <u>shall meet the qualifications and criteria established</u> for the position as set forth <u>in this Agreement</u>, <u>the Manuals</u>, and as otherwise specific in writing, and <u>shall be acceptable to the Company</u>;[32]

(8)     Licensee must obtain Company's written approval of a Team Leader. . .The Team Leader <u>shall devote</u> his or her substantial energy and best efforts to his or her responsibilities as Team Leader and may not engage in the sale of real estate or any other business activity;[33]

(9)     Members of the Licensee's Group. . . <u>shall attend</u> and complete <u>to Company's satisfaction</u> such additional courses, seminars, conferences, and other training or coaching programs, including, refresher courses, as Company may require from time to time and as stated in the Manuals or as otherwise stated by Company in writing, and pay KWRI fees for such training;[34]

3.19    Moreover, the License Agreements maintain a provision against the harassment, intimidation, and/or discrimination, for which it retains the right to terminate a License Agreement if KWRI deems such to be antithetical to the reputation of the Company, or detrimental to the KWRI's owners, directors, officers or employees, the Keller Williams Realty name or the network of Market Centers, or which KWRI deems is in conflict with the Company's Mission Statement, business philosophy, culture, or Licensee's best interest.[35] Based upon such provision, Defendants

---

[29] *Id*.
[30] *Id.*
[31] *See id* (emphasis added).
[32] Defendants'App.227 (emphasis added).
[33] *Id* (emphasis added).
[34] Defendants' App.229 (emphasis added).
[35] *See* Defendants' App.258.

may terminate, without notice, any License Agreement, wherein they find a member of a Licensee's team to have violated the above "policy."

3.20    Conversely, Defendants want this Court to dismiss Plaintiff's claims, which do not include any claim involving fault or negligence towards and/or by her employees and/or team, but which are based on behavior by employees, executives and/or officers, and representatives of KWRI, which is antithetical to KWRI's alleged mission statement. In essence, Defendants are asking this Court to conclude Defendants possess no duty to ensure that their "employees" and/or Licensees do not suffer discrimination, intimidation, retaliation, and/or harassment from corporate level employees, representatives, directors, executives, and/or officers, who all represent the KWRI brand, and who exercise a heightened level of control and influence over Licensees such as Plaintiff.

3.21    Such a position does not fit with the "brand" of KWRI, or at least that which they portray publicly. In this regard, examination of KWRI's website demonstrates that each open position for KWRI contains the following statement on the position posting:

> **KELLER WILLIAMS CORE VALUES RESPONSIBILITY:** Every member of the Keller Williams leadership team is responsible for leading and modeling diverse, equitable, and inclusive practices in the workplace relative to hiring, promoting, paying, and managing people. Leaders are expected to treat all people with civility, respect, and dignity and demonstrate the 10 core values that form our belief system.[36]

"It is also 'clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.'" *Ogbogu v. Navin*, 2019 WL 4307011, *6 (N.D. Tex. Aug. 16, 2019) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1342 n.6 (5th Cir. 1994)). Accordingly, Plaintiff requests that the Court take judicial notice of these publicly

---

[36] *See e.g.* https://jobs.lever.co/kwx/59f659d1-0062-4973-9eb1-c9159f6c2a19; https://jobs.lever.co/kwx/84992e01-1497-4c62-bc59-b0814e8e04db.

available website postings, which suggest that KWRI's "leadership team," which includes positions such as those held by Davis, Osborn, and Keller, is expected to treat others with civility, respect, and dignity, and demonstrate KWRI's core values. Such unequivocally demonstrates a duty of care towards others, like Plaintiff, for which Defendants retain the right to control.

3.22    Importantly, as set forth above, and as demonstrated in a case relied upon by Defendants in the Dismissal Brief, a threshold issue for determination of an employment relationship is to examine "whether the franchisor has the right to control the franchisee <u>with respect to the details of that conduct</u>. *See State Farm Mut. Auto. Ins. Co. v. Traver,* 980 S.W.2d 625, 627 (Tex. 1998)." *Domino's Pizza, L.L.C. v. Reddy*, 2015 WL 1247349, at *1 (Tex. App.—Beaumont Mar. 19, 2015, pet. denied); *see also Farlow*, 284 S.W.3d at 911-12 (finding the "right to control must extend to the specific activity form which the injury arose"). In the instant matter, Plaintiff's injuries arise from claims of misconduct involving harassment, retaliation and a hostile work environment. *See generally* the Amended Complaint. Based upon the aforementioned, it can unequivocally be inferred that Defendants possessed the right to control these activities and/or conduct in relation to KWRI's executives, officers, representatives, and/or employees. Also of significance is the fact that Plaintiff possessed no authority or control over the actions of her superiors, who by virtue of their positions in the Region and/or within the corporate office of KWRI, were outside of her chain of command. The company values noted above also demonstrate this responsibility, and control, lie with Defendants.

3.23    By way of further example, while Defendants contend the events surrounding Seth Campbell and his removal are irrelevant, such exhibits a striking example of Defendants' right to control in the arena of discrimination, harassment and/or retaliation of a superior within the KWRI ecosystem. In this regard, in the Amended Complaint, Plaintiff asserted that in or around <u>July</u>

17

2020, <u>KWRI removed</u> Seth Campbell, <u>a Regional Director</u> (akin to the positions held by Osborn, Davis, and Garrett), and all association he possessed with KWRI, based upon multiple allegations of sexual harassment that went back to 2015. *See* the Amended Complaint, ¶ 3.90. In this regard, Seth Campbell was removed from his position <u>upon the action of Defendants</u>. *Id*. Also important to note is the fact that Defendants considered allegations that were at least five (5) years old in making the decision to exercise such control. *See id*.

    3.24    Moreover, other members of the Board (Mary Tennant, whom Plaintiff reported Davis' behavior to, and Mo Anderson) for KWRI were approached with these complaints about Seth Campbell, and these Board members represented that they would report the employee's complaint; however, seemingly such never happened as no representative followed up with the complainant. *Id*. at ¶ 3.93. Significantly, the behavior Seth Campbell was reported for was eerily analogous to that which Plaintiff endured, only further demonstrating a cultural environment wherein women are objectified, harassed, and abused by superiors within the ecosystem, with no concern or action from a corporate level. *See id*. at ¶¶ 3.91-3.92.

    3.25    As previously enumerated, the standard at the motion to dismiss stage does not require Plaintiff to prove, as a matter of law, that Defendants are her "employer." *See e.g., Nelson*, 2015 WL 3504924, at *4 (citing *Deal*, 5 F.3d at 118 n.2; 479 F.3d at 382 (all representing the proposition that this test is <u>a fact-specific inquiry</u> not appropriate for the 12(b)(6) stage)). Despite such, as demonstrated herein, Plaintiff pled facts sufficient to infer not only that Defendants meet the definition of "employer," but also that an employment relationship with Defendants exists. Accordingly, this portion of the Motion to Dismiss should be denied, in all things.

**D.      Plaintiff's statutory claims are not barred by the statute of limitations**

3.26    As set forth above, the Court must take all factual allegations of Plaintiff as true and must make all reasonable inferences in favor of Plaintiff. *See Twombly*, 550 U.S. at 563; *Lormand*, 565 F.3d 228 at 232, 244 (both for the propositions that the complaint is liberally construed in the plaintiff's favor, and that the court must draw all reasonable inferences in the plaintiff's favor) (emphasis added). Based upon the facts set forth herein, it can be inferred that Defendants, and the actions complained of herein, occurred within the applicable time prior to the filing of the EEOC Charge. *See* the Amended Complaint, ¶¶ 2.5-2.6, 3.97-3.100.

3.27    The Amended Complaint details a long history, which importantly continues to this day, of incessant, constant, and pervasive actions of discrimination, retaliation, harassment, and a hostile work environment. *See* the Amended Complaint, ¶¶ 3.17-3.102. The Amended Complaint demonstrates that at the hands of Defendants, Plaintiff was subjected to such behavior from at least 2016 through the present day, including acts within the 180 and/or 300 days prior to the filing of the EEOC Charge on December 28, 2020. *Id.* at ¶¶ 3.66-3.89, 3.100, 3.102.

3.28    Plaintiff has pled details that Defendants, not only violated Title VII, the ADA, and/or Chapter 21 of the Texas Labor Code ("Chapter 21") within the prescribed time period, but that Defendants continue to retaliate against, harass, and treat Plaintiff with hostility by (1) continual denial of renewal of her Franchise Agreements for her three Market Centers from 2017 through the present date; (2) continual prevention of her participation in the Legacy Program beginning in 2018 through the present date; (3) continuously interfering with her businesses beginning in 2016 through the present date; (4) continuing to disparage Plaintiff and her employees; (5) causing the individual selected to take her place as OP, in accommodation of her disability and to isolate her from continuing harassment and hostility, to resign in 2021; and (6)

continually denying Plaintiff's reasonable requests to accommodate her disability from 2018 to present date. *See* the Amended Complaint, ¶¶ 3.67, 3.71-3.73, 3.76-3.79, n.24, 3.81-3.86, n.25, n.26, n.27, 3.88-3.89, 3.100, 3.102. In this regard, Plaintiff's claims under Title VII, Chapter 21, and the ADA are not time barred.

    3.29    Within the Amended Complaint, Plaintiff detailed her allegations and included permissible and relevant background information to (1) give context to her Title VII, Chapter 21, and ADA claims for Defendants' discriminatory, retaliatory, harassing, and hostile treatment of Plaintiff, and other women in the KWRI ecosystem; and (2) demonstrate that she has been subjected to a continuing practice of improper behavior by Defendants. *See* the Amended Complaint, ¶¶ 3.66-3.89, 3.100, 3.102. Further, it is axiomatic that hostile work environment claims, "involve repeated conduct" and such claims are:

> "composed of a series of separate acts that collectively constitute one 'unlawful employment practice,' and further, it does not matter that some of the component acts fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered for the purposes of determining liability."

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *see also Blanchet v. Chevron/Texaco Corp.*, 368 F. Supp. 2d 589, 597 (E.D. Tex. 2004) (citing *Morgan,* 536 U.S. at 115, 122 S.Ct. 2061) (holding "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'"). Further, "the existence of past acts . . . does not bar employees from filing charges about related discrete acts. . . . Nor does the statute bar an employee from using the prior acts as background to support a timely claim." *Morgan*, 536 U.S. at 103.

    3.30    In the instant case, as outlined above, Defendants committed discrete bad acts over time, which occurred within the limitations period and continue to date, with no corrective action

from Defendant. Taking everything into consideration, Plaintiff <u>timely filed</u> her claim based on independent and continuing discriminatory acts, outlined prior acts as background support, and exhausted her administrative remedies. Thus, this portion of the Motion to Dismiss should be denied.

**E.     Plaintiff's tortious interference claims are not barred by the statute of limitations**

3.31    Defendants contend that both of Plaintiff's tortious interference claims (tortious interference with an existing contract and with prospective business relationship) are barred by the applicable statute of limitations. *See* the Dismissal Brief, pp.4-5. Defendants correctly assert that the applicable statute of limitations is two years; however, Defendants miss that mark as to the timeframe of the alleged tortious conduct.

3.32    When a cause of action arises under Texas law, federal courts apply the Texas statute of limitation, along with any accompanying rules regarding accrual and tolling. *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145 (5th Cir. 1997) (citations omitted). Furthermore, "a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

3.33    The Amended Complaint demonstrates that Plaintiff first sought application to the Legacy Program in or around October and/or November 2018. *See* the Amended Complaint, ¶¶ 3.78-3.80, 3.88-3.89, 3.102, 4.48, 4.55-4.56. Subsequently, the pleadings demonstrate that Plaintiff has repeatedly continued to seek approval for entry into the Legacy Program and to gain approval from the Region to appoint Mr. Tolar as OP, and her attempts continued up until November 2021 when he resigned for their refusal to appoint him. *Id*. To date, Defendants have wholly failed to address and/or approve her continued requests and/or application for this program,

or to approve a new OP. *Id*. The same is true with regard to the implied contract with KWRI and the renewal of Plaintiff's three Market Centers, as the pleadings demonstrate continual interference at the hands of Defendants, as well as Defendant Davis and Defendant KWRI. *See* the Amended Complaint, ¶¶ 3.72-3.85, 3.88-3.89, 3.102, 4.48, 4.55-4.56.[37] Of note, beginning in 2019, through 2020, Keller was the CEO of KWRI, and thus, final approval, and/or refusal of approval ultimately was within his province. *See* the Amended Complaint,¶¶ 3.6, n.5, 3.78-79.

3.34    A continuing tort is "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Twyman v. Twyman*, 790 S.W.2d 819, 821 (Tex. App.—Austin 1990, writ granted), *rev'd on other grounds*, 855 S.W.2d 619 (Tex. 1993) (citing 54 C.J.S. *Limitations of Actions* § 177, at 231 (1987)); *see also Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 587–88 (Tex. App. –Austin 2007, pet. denied) ("a continuing tort is an ongoing wrong causing a continuing injury that does not accrue until the tortious act ceases"); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 155 (Tex. App.—Dallas 1980, no writ) (applying the continuing tort doctrine in false imprisonment case); *Aspenwood Apartment Corp. v. Coinmach, Inc.*, 349 S.W.3d 621, 628–40 (Tex. App. –Houston [1st Dist.] 2011), *aff'd in part, rev'd in part sub nom.*, 417 S.W.3d 909 (Tex. 2013) (appellate court applying the continuing tort doctrine to <u>tortious interference claim</u>). As demonstrated above and in the Amended Complaint, this case does not involve acts that are complete in themselves, but instead involve a continuing course of conduct, which over a period of years has caused Plaintiff injury. *See* the Amended Complaint, ¶¶ 3.78-3.80, 3.88-3.89, 3.102, 4.48, 4.55-4.56.

---

[37] Importantly, Defendants fail to challenge Plaintiff's claims for interference with Plaintiff's prospects of selling her Market Centers.  Thus, such claim remains.

3.35    Taking the aforementioned into consideration, Plaintiff's pleadings have demonstrated facts sufficient to overcome the statute of limitations, and for such reason, this portion of the Motion to Dismiss should be denied.

**F.    Plaintiff's breach of contract claim does not fail**

3.36    The entirety of Defendants' challenge to this cause of action surrounds Defendants' contention that Plaintiff failed to plead that all conditions precedent had been satisfied with regard to the renewal of her License Agreements. *See* the Dismissal Brief, pp.10-11. Defendants' argument fails for multiple reasons.

3.37    First, Plaintiff's claims by and through this cause of action surround a contract implied-in-fact contract, wherein KWRI contracted to provide Plaintiff with a License Agreement, as well as continued renewals, if she fulfilled her obligation to act as OP. *See* the Amended Complaint, ¶¶ 4.59. Plaintiff also pled that any argument by Defendants that she had not fulfilled any potential other applicable condition precedent was meritless, and a pretextual attempt to avoid liability. *Id*. at ¶¶ 3.71-3.73, 3.86 n.28. In fact, Plaintiff specifically alleged that she met the conditions for approval and that she had abided by the terms of her License Agreements. *Id*.

3.38    Further, this District denied a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) finding that the plaintiff's pleading of "'an agreement' and 'implied [-]in fact agreement' with. . . Defendants" was sufficient, by concluding that "[a]lthough it is set forth summarily, this statement is sufficient to allege the existence of a valid contract between. . . Defendants and plaintiffs." *Lonergan v. A.J.'s Wrecker Service of Dallas, Inc.*, 1999 WL 462333, at *1 (N.D. Tex. July 6, 1999) (citations omitted).

3.39     Taking the aforementioned into consideration, Defendants' argument that Plaintiff failed to plead the satisfaction of conditions precedent fails. Accordingly, based upon the precedent set forth above, this portion of the Motion to Dismiss should be denied.[38]

**G.      Plaintiff maintains a valid claim for Declaratory Judgment**

3.40     In the Motion to Dismiss, Defendants alleged that Plaintiff cannot maintain a claim for declaratory relief, as Defendants contend Plaintiff merely restated an element necessary for recovery under Plaintiff's statutory claims. *See* the Dismissal Brief, pp.11-12. Defendants further contend that Plaintiff is seeking to re-write her Franchise Agreements, which in reality, is not the relief sought by Plaintiff in the Amended Complaint. *See* the Amended Complaint, ¶¶ 4.67-4.69. Defendants confirms; however, that the Court may interpret a contract in a request for declaratory judgment. *See* the Dismissal Brief, p.11. <u>This is precisely what Plaintiff has asked the Court to do</u>.

3.41     In the Amended Complaint, Plaintiff requested that the Court interpret the contracts and law before it and make a determination as to the employer status of Defendants. Moreover, Plaintiff does not seek for the Court to confer rights that it does not have, but to interpret the License Agreements, together with the facts, and make a ruling on the "employer" issue. *See* the Amended Complaint, ¶¶ 4.67-4.69. Although not challenged in the Motion to Dismiss, Plaintiff also sought declaratory relief from the Court for a determination as to whether the defendants in this lawsuit in fact violated multiple provisions of the License Agreements, as well as their own policies and procedures. *See* the Amended Complaint, ¶¶ 4.69.

---

[38] Notably, Plaintiff also alleged that Keller caused a novation to the Franchise Agreement, which allowed her to replace herself as OP by and through the Legacy Program, i.e., a contract implied-in-fact. Plaintiff also alleged that since such time, KWRI has failed to approve Plaintiff for the Legacy Program, in breach of this implied-in-fact contract. Plaintiff would show the Court that Defendants did not challenge this portion of Plaintiff's breach of contract claim in their Motion to Dismiss, and as such, Plaintiff objects to any consideration of the same in the context of the Motion to Dismiss.

3.42     Most notably, is the fact that Defendants wholly failed to present this Court with any applicable Federal case law in support of this portion of its Motion to Dismiss. Defendants solely relied upon Texas State court precedent, when Plaintiff's claims were brought pursuant to 28 U.S.C. § 2201, for which there is a completely different standard to demonstrate entitlement to relief. *See* the Amended Complaint, ¶ 4.69; *see also generally* the Dismissal Brief, pp.11-12. Accordingly, Defendants have presented no support for the relief sought in the Motion to Dismiss as to Plaintiff's claim for declaratory relief, and as such, this portion of the Motion should not be considered, and should be denied. To the extent the Court considers this argument for dismissal, Plaintiff herein specially excepts to such consideration, as Plaintiff was not provided with fair notice of such ground.

3.43     Nevertheless, Plaintiff contends that the relief sought conforms with the three-part test Federal courts perform in determining the propriety of a declaratory judgment action. This examination requires a determination that (1) "the Court has federal jurisdiction over a justiciable controversy between the parties to the action;" (2) "whether it has 'authority' to grant declaratory relief;" and (3) the Court must "determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action.'" As the Court has authority to interpret a contract, Plaintiff contends the Court should exercise its discretion to decide this request for declaratory relief.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court deny the Motion to Dismiss in all things, but <u>if the Court grants any portion of the Motion to Dismiss, then Plaintiff prays the Court to grant Plaintiff leave to amend her complaint before dismissing any of her claims with prejudice</u>. Plaintiff also prays the Court to grant her such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

/s/ *Ericha R. Brown*
Michael Y. Kim
State Bar No. 24039960
mkim@mkimlegal.com
Ericha Ramsey Brown
State Bar No. 24051952
erbrown@mkimlegal.com
Monica L. Narvaez
State Bar No. 24088113
mnarvaez@mkimlegal.com
Eduardo R. Garza
State Bar No. 24120843
egarza@mkimlegal.com

**THE MICHAEL KIM LAW FIRM, PLLC**
4236 W. Lovers Lane
Dallas, Texas 75209
(214) 357-7533
(214) 357-7531 Facsimile

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been forwarded in accordance with the Federal Rules of Civil Procedure by electronic service and/or electronic mail on this 3rd day of May, 2022:

Kristin L. Bauer
Texas Bar No. 24006813
Kristin.Bauer@jacksonlewis.com
Claire L. Cook
Texas Bar No. 24086220
Claire.Cook@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas  75201
(214) 520-2400
(214) 520-2008 Facsimile

Jay Wallace
jwallace@bellnunnally.com
Parker A. Burns
pburns@bellnunnally.com
BELL NUNNALLY
2323 Ross Ave., Suite 1900
Dallas, Texas 75201
(214) 740-1400
(214) 740-1499 Facsimile

A. Boone Almanza
Texas Bar No. 01579001
balmanza@abdmlaw.com
ALMANZA, BLACKBURN, DICKIE
   & MITCHELL, LLP
2301 S. Capital of Texas Highway, Bldg. H
Austin, Texas 78746
(512) 474-9486
(512) 478-7151 Facsimile

James T. Drakeley
Texas Bar No. 06111600
jdrakeley@spencerfane.com
Laurie N. Patton
Texas Bar No. 24078158
lpatton@spencerfane.com
SPENCER FANE LLP
5700 Granite Parkway, Suite 650
Plano, Texas 75024
(972) 324-0300
(972) 324-0301 Facsimile.

/s/ *Ericha R. Brown*
Ericha Ramsey Brown