IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| INGA DOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-01209-P |
| | § | |
| KELLER WILLIAMS REALTY, INC., | § | |
| JOHN DAVIS, GO MANAGEMENT, LLC, | § | |
| DAVID OSBORN, SMOKEY GARRETT, | § | |
| AND GARY KELLER, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS KELLER WILLIAMS REALTY, INC. AND GARY KELLER'S REPLY TO PLAINTIFF, JOHN DAVIS, GO MANAGEMENT, LLC, DAVID OSBORN, SMOKEY GARRETT'S RESPONSES TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Defendants Keller Williams Realty, Inc. ("KWRI") and Gary Keller ("Keller") (collectively "Defendants") file their Reply to the Responses that Inga Dow, John Davis, GO Management, LLC, David Osborn, and Smokey Garrett filed in opposition to Defendants' Motion to Compel Arbitration. In support, Defendants respectfully show the following:

### I. INTRODUCTION

Dow's defenses to arbitration go to the entirety of the License Agreements, and therefore, any dispute regarding the arbitrability of her claims should be decided by an arbitrator. Irrespective of that argument, there is no doubt that Dow agreed to arbitrate her claims. As a Controlling Principal in the Market Centers, Dow is bound by the plain and unambiguous language of the License Agreements – including their arbitration provisions – and her attempt to focus on isolated language in other sections of the License Agreements ignores that plain language. Further, there is consideration to support the License Agreements, which in turn provides consideration for Dow's agreement to arbitrate.

---

**DEFENDANTS' REPLY TO DEFENDANTS' MOTION TO COMPEL**  Page 1

The arbitration clauses unambiguously state that disputes regarding the License Agreements or the relationships created by the License Agreements are to be submitted to arbitration. Dow asks the Court to award relief based on the License Agreements; Dow also asks the Court to determine the relationship between her and one or more defendants, including KWRI. Such matters fall squarely within the scope of the arbitration clauses in the License Agreements.

Finally, it is appropriate to compel the nonsignatory defendants to arbitration because the claims against them fall within the scope of the arbitration agreements, are inextricably intertwined with the claims against KWRI and Gary Keller, and/or because these nonsignatory defendants benefitted from the License Agreements.

## II.   ARGUMENT

**A. Dow's Contractual Defenses Go to the Entirety of the License Agreements, Not Just the Arbitration Clauses, and As Such, the Issue of Arbitrability Must Be Determined by the Arbitrator.**

Dow nominally argues that the arbitration clauses contained in the License Agreements are invalid. However, Dow's defenses to arbitration relate to the License Agreements as a whole, not just the arbitration clauses contained in License Agreements. For example:

- Dow contends that "the language contained in the License Agreements, including the arbitration clauses, is unclear and ambiguous . . ." [Dkt. 110, ¶ 3.14].

- Dow contends there was an implied contract – not an express contract – relating to the enforceability of the License Agreements as a whole, not just the arbitration clauses. [Dkt. 110, ¶ 3.30].

- Dow claims her causes of action and allegations are made in her "individual capacity," independent of the License Agreements, yet calls on the Court to interpret the License Agreements to determine the relationship between the parties – specifically whether she was an employee, not an independent contractor. [Dkt. 110, ¶¶ 1.5, 3.13].

In short, Dow's defenses are not limited to the arbitration clauses. It is settled that when a contractual defense relates to a contract as whole, the issue of arbitrability must be decided by an

---

arbitrator. *See Arnold v. HomeAway, Inc.,* 890 F.3d 546, 550 (5th Cir. 2018); *In re FirstMerit Bank, N.S.,* 52 S.W.3d 749, 756 (Tex. 2002). Indeed, Plaintiff relies on this line of case law in her response, noting "[t]he Supreme Court has held that 'a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.'" Dkt. 110, ⁋ 3.4; *Arnold,* 890 F.3d at 553 (5th Cir. 2018) (emphasis added) (citing *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449 (2006)). Dow's defenses against arbitration reach the License Agreements as a whole, and thus, the arbitrability of this dispute must be determined in arbitration. The Court may end its analysis with respect to Dow's claims against Defendants here. Nonetheless, arbitration is required for the additional reasons set forth below.

### B. Dow Objectively Assented to the License Agreements.

Dow argues that there was no mutual assent to be bound by License Agreements because she is asserting claims in her individual capacity. Dow's argument ignores the plain language of the License Agreements – which not only provide that Dow is a "Controlling Principal," but also state that Controlling Principals must arbitrate claims with KWRI, therefore securing her agreement to arbitrate in her individual capacity. (Exhibit A, ⁋ 19.03, App. 55; Exhibit B, ⁋ 20.03, App. 174-175; Exhibit C, ⁋ 20.03, App. 272) (each License Agreement stating that "[i]f the parties (including Controlling Principals) cannot fully resolve and settle a Dispute . . . . [the matter] shall be submitted to binding arbitration . . . ."); *see also Cooks v. AutoNation*, No. 3:15-CV-1929-B, 2015 U.S. Dist. LEXIS 173264 at *4-5 (N.D. Tex. Dec. 30, 2015) (noting mutual assent requires "mutual understanding . . . to the agreement regarding the subject matter and the essential terms of the contract") (quoting *Potcinske v. McDonald Prop. Invs., Ltd.,* 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.)), App. 328-330; *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 918 (5th Cir. 2014). Dow is an agent and principal of the franchises at issue, and as a

Controlling Principal, Dow signed the License Agreements in her individual capacity. (Exhibit A ⁋ 5.01(9), App. 14; Exhibit B ⁋ 6.01(11), App. 129; Exhibit C ⁋ 6.01(11), App. 226). The plain language of the License Agreements specifically states: "All of the Controlling Principals shall jointly and severally guarantee Licensee's performance hereunder and shall bind themselves to the terms of this Agreement." (Exhibit A ⁋ 5.01(9), App. 14; Exhibit B ⁋ 6.01(11), App. 129; Exhibit C ⁋ 6.01(11), App. 226). The License Agreements further state: "Each jointly and individually makes and agrees to perform all of the covenants, representations, warranties and agreements of the Controlling Principals set forth in the License Agreement . . . 'Each' is included in the term 'Controlling Principal.'" (Exhibit A, Agreement and Guaranty of Controlling Principals, App. 66; Ex. B, Agreement and Guaranty of Controlling Principals, App. 179; Exhibit C, Agreement and Guaranty of Controlling Principals, App. 277). Dow cannot avoid the arbitration provision by claiming she signed in her individual capacity because she specifically agreed to be bound in her individual capacity. Objectively, Dow assented to be bound by the License Agreements, including their arbitration provisions.

The facts here are analogous to those in *Williamette Crest Gaming, LLC v. Play N Trade Franchise, Inc.*, No. CV-09-461-ST, 2009 U.S. Dist. LEXIS 134586 (D. Or. June 24, 2009), App. 337-343. In that case, two individuals signed a franchise agreement as principals of the franchise entity, yet they sought to avoid the arbitration clause in the franchise agreement arguing that they were nonsignatories to the agreement. *Williamette*, 2009 U.S. Dist. LEXIS 134586, at *18, App. 337-343. The court found that even if they tried to claim that they did not sign as individuals, the franchise agreement itself clearly made them parties to the agreement. *See id.*, App. 337-343. Additionally, each principal agreed to be bound individually and jointly by all provisions of the agreement. *Id.* at *20, App. 337-343. The court also agreed with the franchisor's argument that

the individuals were bound as agents and principals of the franchisee, finding that the individuals' claims of misrepresentation related to the disclosures required by law to be made by a franchisor to franchisee. *Williamette*, 2009 U.S. Dist. LEXIS 134586, at *21, App. 337-343.

Dow also seems to contend that she should not be required to arbitrate because she did not anticipate experiencing harassment or discrimination. It is unclear what type of contractual defense if any that Dow is trying to make, but regardless, this is an entirely subjective argument. As noted by Dow, the test to determine assent to a contract is an objective one. *See In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2018) ("The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on the subjective state of mind."); Dkt. 110, ¶ 3.11. The plain language of the License Agreements calls for the arbitration of disputes over the parties' relationship or the agreements. Exhibit A, ¶ 19.03, App. 55-56; Exhibit B, ¶ 20.03, App. 174-175; Exhibit C ¶ 20.03, App. 272. Dow's declaratory judgment action asks the Court to determine the parties' relationship as that of employer/employee and not an independent contractor. Dkt. 63, ¶ 4.69. Her statutory employment discrimination claims require the same analysis. She additionally alleges that KWRI did not fulfill its contractual obligations to her as set forth in the License Agreements. Dow initialed every single page of each of her License Agreements and had the opportunity to consult with counsel before doing so. Objectively, Dow assented to arbitration.

### C. The License Agreements Are Supported by Adequate Consideration.

Dow also contends that the arbitration clauses lack consideration because the promise to arbitrate is illusory, noting the carve out of injunctive relief for a narrow subset of claims. Once again, Dow's argument fails. That is because when an arbitration clause is contained in a larger agreement, consideration for the entire agreement will support the promise to arbitrate. *In re*

*AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) ("[W]hen an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration."); *Architectural Concepts v. Hunt Constr. Grp.*, No. A-19-CV-00600-JRN, 2019 U.S. Dist. LEXIS 238356, at *5-6 (W.D. Tex. 2019) ("Texas law does not require separate consideration for arbitration clauses, only that the contract itself is supported by consideration."), App. 344-346.

In this case, it is undisputed that both parties exchanged valuable consideration to support the License Agreements. KWRI offered Dow a Market Center and access to the KWRI brand, training, and system in exchange for Dow's payment of certain fees including licensing fees, continuing production royalties, and other fees and charges listed and described in the License Agreements. (Exhibit A, ¶ 4.02, 4.03, App. 11-12; Exhibit B ¶ 5.01, 5.02, 5.03, App. 125-126; Exhibit C, ¶ 5.01, 5.02, 5.03, App. 222-223). In no uncertain terms, the License Agreement unequivocally states: "In consideration of the undertakings and commitments of each party set forth in this Agreement, the parties agree as follows . . ." and then details the terms of the understanding. (Exhibit A, Recitals, App. 4; Exhibit B, Recitals, App. 109; Exhibit C, Recitals, App. 209). Dow's "illusory promise" argument related to the arbitration clauses within the broader License Agreements is irrelevant and without foundation. *See In re Halliburton Co.*, 80 S.W.3d 566, 569–70 (Tex. 2002); *cf. Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 207 (5th Cir. 2012). Although Dow cites the Fifth Circuits decision in *Carey* for the proposition that the arbitration clause is illusory, Dow misstates the import of that case. On the contrary, *Carey* held that the contract was illusory because the defendant retained the unilateral right to modify or terminate the arbitration provision at any time. *Carey*, 669 F.3d at 205-207. That is not the situation here.

### D. Nonsignatories Can Be Required to Arbitrate

Defendants John Davis, GO Management, LLC, David Osborn, and Smokey Garrett resist arbitration on the grounds that there is never any situation in which a nonsignatory to an arbitration agreement could be forced to arbitrate. That is simply not the law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 625 (2009) (a holding that non-parties to a contract are categorically barred from relief is error); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249 (5th Cir. 2014) (noting five situations in which a signatory can compel a nonsignatory to arbitration: (1) assumption, (2) piercing the corporate veil/alter ego, (3) incorporation by reference, (4) agency/third-party beneficiary theories, and (5) waiver and estoppel). In franchise relationships, the most common theories used to compel an arbitration agreement against a nonsignatory are promissory estoppel, incorporation by reference, and agency. *See, e.g., Int'l Paper Co.,* 206 F.3d. at 418. Those theories are applicable here.

As noted in Defendants' brief, under the promissory estoppel theory, a nonsignatory may be compelled to arbitrate if the claims are inextricably intertwined. *See Mac Tools v. Diaz*, No. 2:11-cv-940, 2012 U.S. Dist. LEXIS 56197, *14-15 (S.D. Ohio Apr. 23, 2012) (finding that the nonsignatory was forced to arbitrate because the nonsignatory sought an indirect benefit and the claims were intertwined with the contract), App. 331-336. The following demonstrates that Dow's allegations against all defendants all relate back – directly or indirectly – to the License Agreements and are inextricably intertwined:

- "GOM . . . Osborn and Garrett . . . have engaged in retaliation and sexual harassment against Plaintiff . . . by continuing to deny her application for the Legacy Program, refusing to appoint Scott Tolar as OP, continuing to fail to approve Plaintiff's ten-year renewal of the Fort Worth Market Center, reporting Plaintiff to corporate for false allegations of non-compliance [with the License Agreements], and working to de-value Plaintiff's business." [Dkt. 63, 4.24].

- "KWRI is subject to liability even as a franchisor, because it 'exercised a type of degree of control over the franchisee or the franchisee's employees not customarily exercised by a franchisor for the purpose of protecting the franchisor's trademarks and brand." [Dkt. 63, 4.26].

- "Plaintiff informed KWRI and the DFW Regional Office, by and through Garrett, that she wanted to participate in the Legacy Program and replace herself as OP with Scott Tolar. . . . KWRI and GOM have not only continued to refuse her application . . ." [Dkt. 63, 438-4.39, 4.43-4.44].

- "Plaintiff pursued the application to make Scott Tolar the OP of her Market Centers through the Legacy Program. Defendants continued to refuse to approve the application to make Scott Tolar an OP . . . Specifically, Tolar could no longer . . . continue a commute . . . for a position that he feared would continually be discredited and remain unapproved based on the continued hostility toward Plaintiff." [Dkt. 63, 4.48].

- "Defendants have all interfered with Plaintiff's employment relationship with KWRI through the implied contract she made with KWRI to act as the OP of her Market Centers and/or offices, as a condition precedent to being granted a franchise license. Moreover, Defendants' actions in blocking, prohibiting, and/or failing to approve her license renewal and threatening closure of her Johnson County office interfered with her employment relationship, as well as the implied contract that she would be granted renewals so long as she continued to perform her duties under the implied contract, i.e., remain OP." [Dkt. 63, 4.50].

- "Plaintiff sought to appoint Scott Tolar as OP for her Market Centers and submitted the requisite application. Defendants have refused this application and continue to do so, without good reason, to date." [Dkt. 63, 4.54].

- "KWRI entered into an implied-in-fact contract with Plaintiff to provide her with a Franchise Agreement, under which she could operate her Market Centers, including renewals of such agreement, if Plaintiff fulfilled the condition precedent of acting as the OP for the Market Centers. Plaintiff acted, and continues to act to this day, as the OP of her Market Centers, yet, KWRI has failed to renew Plaintiff's Franchise Agreement." [Dkt. 63, 4.59].

- "Keller . . . altered and/or caused a novation to the franchise agreement when he announced the institution of the Legacy Program, which would allow for Plaintiff to appoint an OP to act on her behalf, while still maintaining ownership of her Market Centers. Since this novation, in or around September 2018, KWRI has failed to approve Plaintiff's application to the Legacy Program." [Dkt. 63, 4.59].

- "To date, KWRI has failed and/or refused to perform the obligations and duties owed to Plaintiff under an implied-in-fact contract with Plaintiff." [Dkt. 63, 4.59].

- "To the extent that the promise made by KWRI to Plaintiff to franchise to Plaintiff, and continue to renew such Franchise Agreement, so long as Plaintiff fulfilled the condition precedent of acting as the OP for the Market Centers is ultimately determined not to constitute an implied-in-fact contract, then its promise is a contract implied-in-law or 'quasi-contract.'" [Dkt. 63, 4.61].

- "Further, to the extent that Keller's novation to the Franchise Agreement, by and through his announcement of the institution of the Legacy Program, which allows for Plaintiff to appoint an OP to act on her behalf, while still maintaining ownership of her Market Centers, is ultimately determined not to constitute an implied-in-fact contract, then its promise is a contract implied-in-law or "quasi-contract." [Dkt. 63, 4.61].

- "Davis and/or Osborn breached these fiduciary duties in the following ways, including but not limited to: (a) interfering with Plaintiff's businesses and success by poaching agents, leaders, and/or top producers; (b) failing to renew Plaintiff's Franchise Agreement; (c) failing to approve of Plaintiff's application to the Legacy Program; (d) participating in reports of alleged and untruthful non-compliance [of the License Agreements] through the Regional Office; (e) acting to de-value Plaintiff's business; (f) making Plaintiff an offer to purchase her businesses at a rate well below its appraised value; (g) interfering with the potential sale of Plaintiff's business to third-parties; and/or (h) continuing to disparage Plaintiff and her businesses to others in the industry." [Dkt. 63, 4.65].

In short, there is no doubt that Dow's claims against each defendant are intertwined and/or that co-defendants benefited, directly or indirectly from the License Agreements. Indeed, if there were to be multiple actions – *e.g.,* one in court and one in arbitration – there would be multiple dispositions of the same set of facts and/or legal theories. For example, Dow contends that one or more defendants employed her. (Dkt. 63, ¶¶ 3.7, 3.16, 3.34, 4.13, 4.24, 4.31, 4.32, 4.69). She also alleges that she was denied opportunities, such as the opportunity to participate in a legacy program or to have her preferred operating principal approved pursuant to the License Agreements, by several defendants. (Dkt. 63, ¶¶ 3.78, 3.79, 3.80). And even though the License Agreements are with KWRI, she contends that others involved in a regional entity, specifically GO Management LLC, Osborn and/or Garrett, were the reason that she was denied those and other opportunities. (Dkt. 63, ¶¶ 3.79, 3.80, 3.88). Those opportunities form the basis of several of Dow's theories of relief, including statutory discrimination claims, her breach of contract and/or implied contract claims,

and the tortious interference claims, among others. Dow also contends that based on Davis's alleged misconduct, all of the remaining defendants retaliated against her and/or continued the alleged discrimination and/or harassment against her. (Dkt. 63, ¶ 3.88). Given the interrelated nature of the claims, it is appropriate to compel GOM, Davis, Garrett, and Osborn to arbitration. *See Mac Tools*, No. 2:11-cv-940, 2012 U.S. Dist. LEXIS 56197, at *14-15, App. 331-336.

Further, the West Fort Worth License Agreement specifically provides that its arbitration provisions apply to disputes that, inter alia, "arise[] between or among any member of Licensee's Group and [KWRI], its Affiliates, Regional Representatives, Successor and Assigns, and their Respective Directors, officers, shareholders, members, [and the like]." Exhibit C, ¶ 20.02(a), App. 271. Dow alleges that Davis was an officer and/or agent of KWRI during part of the time frame at issue in Dow's allegations. Dow also alleges that GO Management LLC, Osborn, and/or Garrett had regional interests and benefitted from the License Agreements in that their approval was required for certain decisions impacting Dow's Market Centers and the region in which they operated. (Dkt. 63, ¶ 4.65).[1]  Therefore, it is appropriate to compel arbitration of these nonsignatories.[2]  *See Mac Tools*, No. 2:11-cv-940, 2012 U.S. Dist. LEXIS 56197, *14-17, App. 331-336.

### III.    CONCLUSION

For the reasons set forth above, Defendants KWRI and Keller respectfully request that their Motion to Compel Arbitration be granted and that the Court compel arbitration of this dispute.

---

[1] "Regional Representative" is a defined term in section 21.50 of the agreement (similar provisions are in each License Agreement). Per that definition, Regional Representatives are independent contractors who are authorized to perform certain duties on the Company's behalf, as set forth in Section 3.02.

[2] In response to Davis's argument that the License Agreements were not intended to encompass Davis due to the expedited provisions, the AAA rules cited permit parties to seek modifications, which would include the scheduling order. *See* App. 10 to Dkt. 92, Exhibit A. To the extent that Davis is making a procedural unconscionability argument, that argument fails to avoid arbitration on the grounds that procedural unconscionability argument must be decided by an arbitrator, not the courts. *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 724 (5th Cir. 2020).

Respectfully submitted,

By: /s/ *Kristin L. Bauer*
Kristin L. Bauer
Texas Bar No. 24006813
Kristin.Bauer@jacksonlewis.com
Claire L. Cook
Texas Bar No. 24086220
Claire.Cook@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas  75201
PH: (214) 520-2400
FX: (214) 520-2008

**ATTORNEYS FOR DEFENDANTS KELLER WILLIAMS REALTY, INC. AND GARY KELLER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on May 10, 2022.

| | | |
|---|---|---|
| Michael Y. Kim<br>Ericha Ramsey Brown<br>Monica L. Narvaez<br>Eduardo R. Garza<br>THE MICHAEL KIM LAW FIRM, PLLC<br>4236 W. Lovers Lane<br>Dallas, Texas 75209<br>mkim@mkimlegal.com<br>erbrown@mkimlegal.com<br>mnarvaez@mkimlegal.com<br>egarza@mkimlegal.com<br><br>**Attorneys for Plaintiff** | James T. Drakeley<br>Laurie N. Patton<br>SPENCER FANE LLP<br>5700 Granite Parkway, Ste. 650<br>Plano, TX 75024<br>jdrakeley@spencerfane.com<br>lpatton@spencerfane.com<br><br>**Attorneys for Defendant John Davis** | A. Boone Almanza<br>Tanya Robinson<br>ALMANZA, BLACKBURN, DICKIE & MITCHELL LLP<br>2301 S. Capital of Texas Hwy., Bldg. H<br>Austin, Texas 78746<br>TRobinson@abdmlaw.com<br>BAlmanza@abdmlaw.com<br><br>**Attorneys For Defendants Go Management LLC, David Osborn, And Smokey Garrett** |

/s/ *Kristin Bauer*
Kristin L. Bauer

---

**DEFENDANTS' REPLY TO DEFENDANTS' MOTION TO COMPEL**                                            Page 11