IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| INGA DOW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-01209-P |
| | § | |
| KELLER WILLIAMS REALTY, INC., | § | |
| JOHN DAVIS, GO MANAGEMENT, LLC, | § | |
| DAVID OSBORN, SMOKEY GARRETT, | § | |
| AND GARY KELLER, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS KELLER WILLIAMS REALTY, INC. AND GARY KELLER'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO 12(b)(6), SUBJECT TO THEIR MOTION TO COMPEL ARBITRATION**

Defendants Keller Williams Realty, Inc. ("KWRI") and Gary Keller ("Keller") (collectively "Defendants") file their Reply to Plaintiff's Response to Defendants' Motion to Dismiss Pursuant to 12(b)(6), Subject to their Motion to Compel Arbitration. Defendants respectfully show the following:

### I.   INTRODUCTION

Dow's statutory employment discrimination, harassment, and retaliation claims fail because she was an independent contractor/franchisee and did not have an employment relationship with KRWI or Gary Keller. Dow's statutory discrimination claims also fail because they are time barred.

Dow concedes (through silence) Defendants' argument that alleged tortious conduct was not independently tortious or wrongful (versus a dispute over contractual rights and obligations). The tortious interference claims fail on that basis and on limitations grounds as well.

Finally, Dow's breach of contract claim fails because her allegations with respect to the satisfaction of conditions precedent are conclusory.

## II.   ARGUMENT

**A. Dow Has Not Plead Facts That Lead to An Inference KWRI is Dow's Employer.**

The Amended Complaint along with the License Agreements do not establish that KWRI exerted control over Dow as its franchisee in a way that makes the independent contractor relationship a sham or beyond what is customary for a franchisor/franchisee relationship. Further, Dow does not specifically allege anywhere in the Amended Complaint that KWRI had the power to hire her, fire her, set her work schedule, or supervise her such that the economic realities test is satisfied. *See Muhammad v. Dallas Cts. Cmty. Supervision & Corr. Dep't*, 479 F.3d 377, 382 (5th Cir. 2007). Instead, Dow relies on KWRI's licensing arrangement itself as the basis for her allegation that KWRI is an employer (Dkt. 112, ¶ 3.18). Indeed, via her declaratory judgment action, Dow has asked the Court to interpret the License Agreements and declare, based on those agreements, that there is an employment relationship (demonstrating that there are no factual issues to be determined, only an interpretation of the License Agreements' terms). (Dkt. 112, ¶ 3.40) (Dow noting the Court may interpret a contract in a declaratory judgment action and that "[t]his is precisely what Plaintiff has asked the Court to do) (emphasis in original).

It is settled that a franchisor/franchisee relationship is an independent contractor relationship – not an employment relationship – pursuant to decisions interpreting both state and federal employment law statutes. *See Arguello v. Conoco, Inc.*, 207 F.3d 803, 808 (5th Cir. 2000) (finding no agency relationship in ADA case between franchisor and franchisee where language of the franchise agreement, while offering guidelines to the franchisee stores, did not establish that the franchisor had any participation in the daily operations of the branded stores);

*Monk v. Choice Hotels Int'l Servs., Corp.*, No. 15-1699, 2016 U.S. Dist. LEXIS 105806, at *13 (W.D. La. 2016) (holding franchisor did not have an employment relationship or vicarious liability when franchise agreement "clearly provides that [] the franchisee[] is an independent contractor" and that "[n]othing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary joint venturer, partner, ***employee***, or servant of the other") (emphasis added), App. 331-335; *Matthews v. Int'l House of Pancakes, Inc.*, 597 F. Supp. 2d 663, 670 (E.D. La. 2009) (holding that franchisor entities were not liable under Title VII and 42 U.S.C.S. §§ 1981, 1985 as entities were not employers under 42 U.S.C.S. § 2000e; evidence showed that franchisee owned restaurant where employees worked, franchisee and entities did not share officers, equipment, or records, and entities did not direct day-to-day operations of restaurant); *McLaurin v. Fusco*, 629 F. Supp. 2d 657, 661 (S.D. Miss. 2009) (finding Jenny Craig, Inc. could not be liable for its franchisee under Title VII and other federal employment laws because, *inter alia*, they did not share bank accounts, books, accounting records, payroll accounts, personnel records, tax identification numbers, employees, officers, directors, or space); *see also Doe v. Yum! Brands, Inc.*, 639 S.W.3d 214, 234 (Tex. App.—Houston [1st Dist.] 2021) (finding "unconvincing" Plaintiff's argument that the franchisor had sufficient control when the franchise agreement obligated licensees to become familiar with brand standards to ensure compliance, required franchisees to remain in compliance or risk default, requiring franchisees to comply with new standards by a specified date, requiring restaurants to be operated with Pizza Hut's operational standards in rejecting vicarious liability for sexual assault and other torts); *Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 684 (Tex. App.—Fort Worth 1996) (holding in wrongful death action seeking vicarious liability against franchisor that although franchisor retained the right to inspect the restaurant, the contract did not make the franchisor vicariously liable for murder that occurred

at franchisee restaurant). Further, the franchise relationship with KWRI is customary and is not "a mere sham or subterfuge." (Dkt. 112, ⁋ 3.17); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 911 (Tex. App.—Fort Worth 2008); *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 588-90, 592 (Tex. 1964). For example, KWRI retains rights with respect to its own franchises and brand, which is customary to ensure KWRI's brand standards, systems, and marks are protected and kept consistent and uniform; the level of oversight does not delve into the realm of a sham relationship or grant KWRI the right to "control" Dow's businesses. *See e.g.,* App. 109 ("As a result of the considerable expenditure of time, skill, effort and money, [KWRI] has developed and owns a distinctive System that governs the establishment and operation of Market Centers that operate under the Keller Williams® name and related Trademarks . . . [KWRI] intends for the franchise system of Keller Williams® Market Centers to be a limited opportunity franchise with a finite number of franchised Market Centers . . . For these reasons, [KWRI] must require high standards for its business model, representatives and Licensees."); App. 109 (KWRI may deem a Market Center abandoned if a Market Center's unapproved closure for more than seven consecutive days adversely impacts the Market Center or reflects negatively on the goodwill or public image of the KWRI brand); Dkt. 112, ⁋ 3.17; *see also Doe*, 639 S.W.3d at 234 (finding "unconvincing" Plaintiff's argument that the franchisor had sufficient control when the franchise agreement obligated licensees to become familiar with brand standards to ensure compliance, required franchisees to remain in compliance or risk default, requiring franchisees to comply with new standards by a specified date, requiring restaurants to be operated with Pizza Hut's operational standards). The License Agreements provide that Dow retains control of the operations, duties, and obligations of her businesses. (Exhibit A, ¶ 9.01(a), App. 27-29; Exhibit B, ¶ 10.01(a), App. 144-145; Exhibit C, ¶ 10.01(a), App. 241-242; Exhibit A, ¶ 12.01-12.02, App. 33-35; Exhibit B,

p. iii-iv, App. 107-108; Exhibit C, p. iv, App. 208; Exhibit A, ¶ 5.01(e), App. 14-15; Exhibit B, ¶ 6.01(e), App. 129-130; Exhibit C, ¶ 6.01(e), App. 226-227; Exhibit A, ¶ 5.01(f), App. 15; Exhibit B, ¶ 6.01(f), App. 130-131; Exhibit C, ¶ 6.01 (f), App. 227-228; Exhibit A, ¶ 5.01(g), App. 15-16; Exhibit B, ¶ 6.01(g), App. 131; Exhibit C, ¶ 6.01(g), App. 228; Exhibit A, ¶ 5.01(g), App. 15-16; Exhibit B, ¶ 6.01(g), App. 131; Exhibit C ¶ 6.01(g), App. 228; Exhibit A, ¶ 5.01(h), App. 16-17; Exhibit B, ¶ 6.01(h), App. 131-132; Exhibit C, ¶ 6.01(h), App. 228-229; Exhibit A, ¶ 9.01(a), App. 27; Exhibit B, ¶10.01(a), App. 144; Exhibit C, ¶ 10.01(a), App. 241; and Exhibit A, ¶¶ 5.01(h)(2), 9.01(b)(7), App. 16, 28; Exhibit B, ¶¶ 6.01(h)(2), 10.01(b)(7), App. 131-132, 145; Exhibit C, ¶¶ 6.01(h)(2), 10.01(b)(6), App. 228-229, 242. And contrary to Dow's conclusory assertion that the License Agreements "negate the fact that an independent contractor relationship was intended," (Dkt. 112, ₱ 3.18), the plain language of the License Agreements is clear and states that "Licensee is an independent contractor, and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venture, partner, employee or servant of the other for any purpose." (App. 51; App. 168; App. 266). In short, Dow has not articulated facts in the Amended Complaint that would overcome the plain language of the License Agreements and well-established and controlling case law, all of which force the conclusion as a matter of law that Dow is an independent contractor. The statutory employment discrimination claims fail.

    **B.  Dow's Claims are Barred by the Statute of Limitations.**

        **i.  Dow Did Not Timely Raise Her Statutory Claims in a Charge of Discrimination.**

To defeat limitations arguments, Dow argues that "it can be inferred that Defendants, and the actions complained of herein, occurred within the applicable time prior to the filing of the EEOC charge." (Dkt. 112, ₱ 3.26). But a reasonable interference pursuant to *Twombly* and its progeny is different than a conclusory allegation. Dow's sexual harassment, discrimination, and

related allegations (Counts 1, 2, 3, and 4) must allege specific facts to support the timeliness of her claim. As noted in Defendants' motion, Dow's statutory employment law claims center on the actions of Davis, who she admits left KWRI in 2018, and she does not allege continued conduct by him after that date. (Dkt. 63, ¶¶ 3.3, n. 4, 3.85, n. 27). Further, to the extent Dow contends adverse actions were taken against her, she admits that the actions at issue likewise occurred in 2018. The remaining allegations that attempt to bridge her concerns to an actionable timeframe are entirely conclusory.[1] (Dkt. 63, ¶¶ 2.5-2.6). In short, Dow's Title VII, ADA, and Chapter 21 claims are untimely on their face.

> ii. **Dow's Continuing Tort Claim Does Not Save Her Tortious Interference Claims.**

Dow does not address Defendants' argument that the conduct alleged in her tortious interference claim, even if true, is not independently tortious or wrongful with respect to KWRI and Keller. Indeed, she is essentially claiming that obligations owed to her pursuant to the Licensing Agreements were not provided, which is a contract dispute, not tortious interference. Defendants' motion should be granted on this basis alone. *U.S. Enercorp., Ltd. v. SDC Mont.*

---

[1] Dow contends that the adverse actions she suffered were the denial of her choice for operating principal in 2018 and the failure to renew her franchises for a term. However, even assuming the fiction that KWRI employed Dow (which it did not), it is settled that federal and state employment discrimination laws reach only ultimate employment actions. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) ("An adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating."). Here, Dow admits that her franchises have been renewed on a month-to-month basis and that her relationship with KWRI (she contends an employment relationship) remains intact. (Dkt. 63, ¶ 3.72; Dkt. 112, ¶¶ 3.27-3.28). Further, even if Dow were an employee of KRWI (which she is not), denying her selection for Operating Principal would not be considered an adverse employment action either. *See McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) ("Adverse employment actions include only ultimate employment actions such as hiring, granting leave, discharging, promoting, or compensating."); *Simmons v. Methodist Hosps. of Dall.*, No. 3:11-CV-0017-B, 2012 U.S. Dist. LEXIS 58427, at *12 (N.D. Tex. Apr. 26, 2012) (citing *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 360 (5th Cir. 2005)) (noting that employment actions aside from ultimate employment actions – "including disciplinary filings, reprimands, and poor performance reviews – do not constitute adverse employment actions, even as they might affect the plaintiff's future employment."), App. 336-342.

*Bakken Exploration, LLC.,* 966 F. Supp. 2d 690, 704 (W.D. Tex. 2013) (tortious interference with prospective relationships) (citing *Walmart v. Sturges,* 52 S.W.3d 711, 726 (Tex. 2001)).

Dow focuses her response with respect to tortious interference exclusively on the limitations defense, which given the foregoing, the Court need not address. Nonetheless, it is worth noting that Dow relies on the continuing tort doctrine, which "is rooted in a plaintiff's inability to know that the ongoing conduct is causing him injury." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017). But Dow knew of the conduct at issue – such as the denial of Tolar as her operating principal – when it occurred (and/or she does not allege that she did not know). In short, Dow is complaining about discrete actions that she had full knowledge of (and which she incorrectly alleges to be tortious). *Cf. Caldwell Wholesale Co., L.L.C. v. R J Reynolds Tobacco Co.*, 781 Fed. Appx. 289, 294 (5th Cir. 2019) (finding refusal to accept repeated requests to participate in a program were not allegations of continuous tortious conduct, but separate actions). Her tortious interference allegations are untimely, failing for this additional reason as well.

### C. Dow's Breach of Contract Clam Ignores Dow's Conditions Precedent.

In Dow's Response, she continues to ignore the multiple conditions in the License Agreements to renewal for a term (v. month to month). (Exhibit A, ¶ 2.02, App. 8-9; Exhibit B, ¶ 3.02, App. 121-122; Exhibit C, ¶ 3.02, App. 218-220). Her conclusory allegation that she satisfied all conditions precedent is insufficient. Further, Dow cites to *Lonergan v. A.J.'s Wrecker Service of Dallas*, 1999 U.S. Dist. LEXIS 10494 (N.D. Tex. 1999), which is not analogous. The *Lonergan* case holds that there was a contract between the parties despite the defendant's attempt to say there was no contract, which is not the case here. *See id.* at *4-5. Indeed, there are three valid and binding contracts between Dow and KWRI, and Dow has failed to plead that she met all the conditions

precedent to her recovery on those contracts. The breach of contract claims, implied or otherwise, fail on the merits for that reason.

### D. Defendants' Motion is Timely.

Dow contends that Defendants had to make all their Rule 12 motions in the same document. The case Dow cites on this point does not support that argument. Instead, the court in *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F3d 907 (5th Cir. 1993) held that when there are multiple Rule 12 motions and/or defenses, they should be asserted when they are available. In this case, Defendants asserted the same Rule 12 defenses and/or motions in response to Dow's complaints, original and amended.

### III. CONCLUSION

Defendants KWRI and Keller request that their Motion to Dismiss Pursuant to 12(b)(6), Subject to their Motion to Compel Arbitration be granted, that the Court dismiss all claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that Defendants be awarded such other and further relief to which they may be entitled.

Respectfully submitted,

By: */s/ Kristin L. Bauer*
    Kristin L. Bauer
    Texas Bar No. 24006813
    Kristin.Bauer@jacksonlewis.com
    Claire L. Cook
    Texas Bar No. 24086220
    Claire.Cook@jacksonlewis.com
    JACKSON LEWIS P.C.
    500 N. Akard, Suite 2500
    Dallas, Texas 75201
    PH: (214) 520-2400
    FX: (214) 520-2008

**ATTORNEYS FOR DEFENDANTS KELLER WILLIAMS REALTY, INC. AND GARY KELLER**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on May 16, 2022.

| | | |
|---|---|---|
| Michael Y. Kim<br>Ericha Ramsey Brown<br>Monica L. Narvaez<br>Eduardo R. Garza<br>THE MICHAEL KIM LAW FIRM, PLLC<br>4236 W. Lovers Lane<br>Dallas, Texas 75209<br>mkim@mkimlegal.com<br>erbrown@mkimlegal.com<br>mnarvaez@mkimlegal.com<br>egarza@mkimlegal.com<br><br>**Attorneys for Plaintiff** | James T. Drakeley<br>Laurie N. Patton<br>SPENCER FANE LLP<br>5700 Granite Parkway, Ste. 650<br>Plano, TX 75024<br>jdrakeley@spencerfane.com<br>lpatton@spencerfane.com<br><br>**Attorneys for Defendant John Davis** | A. Boone Almanza<br>Tanya Robinson<br>ALMANZA, BLACKBURN, DICKIE & MITCHELL LLP<br>2301 S. Capital of Texas Hwy., Bldg. H<br>Austin, Texas 78746<br>TRobinson@abdmlaw.com<br>BAlmanza@abdmlaw.com<br><br>**Attorneys For Defendants Go Management LLC, David Osborn, And Smokey Garrett**<br><br>Jay Wallace<br>BELL NUNNALLY & MARTIN LLP<br>23323 Ross Avenue, Suite 1900<br>Dallas, TX 75201<br>Jwallace@bellnunnally.com |

                                            /s/ *Kristin Bauer*
                                            Kristin L. Bauer