UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**INGA DOW,**

   Plaintiff,

v.                                                        No. 4:21-cv-1209-P

**KELLER WILLIAMS REALTY, INC.
ET AL.,**

   Defendants.

## OPINION & ORDER

Before the Court is the Motion to Compel Arbitration ("Arbitration Motion") of Defendants Keller Williams Realty, Inc. ("KWRI") and Gary Keller (collectively, "the KWRI Defendants") based on the First Amended Complaint ("Complaint") of Plaintiff Inga Dow ("Dow"). ECF No. 75. Having considered the Arbitration Motion, Responses, and Reply, the Court **GRANTS** the Arbitration Motion as to Dow's claims alleged against the KWRI Defendants and **REFERS** those claims to arbitration. The Court **DENIES** the Arbitration Motion as to the remaining claims. It is **ORDERED** that this case is **STAYED** pending the results of arbitration. The Court directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case until the Court orders it to be reopened.

## BACKGROUND

Dow alleges that she has worked under the KWRI umbrella since 1992. ECF No. 63 at 8. Dow now "owns and/or operates" three KWRI real estate brokerage franchises ("Market Centers"): (1) Fort Worth RE, Ltd. ("Fort Worth Market Center"); (2) Johnson County RE, Ltd. ("Johnson County Market Center"); and (3) Dow WFW RE, Inc. ("Dow Market Center"). ECF Nos. 63 at 27; 84 at 1; 86 at 5, 107, 207; 110 at 8. On behalf of KWRI, its chief executive officer signed the License Agreements ("Agreements") for the Fort Worth and Johnson County

Market Centers ("Fort Worth Agreement" and "Johnson County Agreement"), and its chief operating officer signed the Dow Market Center Agreement. ECF No. 86 at 67, 180, 278. Dow signed each Agreement as the Operating Principal of her franchisee ("Licensee"). *Id.* at 67, 180, 276. No one else signed the Agreements. *Id.*

Each Agreement provides that the Operating Principal is "individually bound by all obligations of the Licensee" and that the Operating Principal is a Controlling Principal. ECF No. 86 at 17, 132, 229. Each Agreement also contains a broad arbitration clause ("Arbitration Clause"). *Id.* at 57, 176, 274.

The Fort Worth Agreement's Arbitration Clause provides, "If the parties (including the Controlling Principals) cannot fully resolve and settle a Dispute through mediation . . . , all unresolved issues involved in the Dispute, except those excluded under Section 19.05, shall be submitted to binding arbitration." *Id.* at 57. The Agreement defines a "Dispute" as "any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement or that concerns the relationship created by this Agreement." *Id.* Section 19.05 of the Fort Worth Agreement allows KWRI to sue rather than arbitrate "(i) to enjoin any infringement or misappropriation of its rights in the Trademarks, the System or its other intellectual property, or (ii) to collect any Production Royalty, Profit Sharing Contribution or other monetary obligation payable by Licensee." *Id.* at 59; *see also id.* at 6 (defining "Company" as KWRI).

The Johnson County Agreement's Arbitration Clause provides that "[i]f the parties (together with the Controlling Principals and Licensee's Principals) cannot fully resolve and settle a Dispute through mediation . . . , all unresolved issues involved in the Dispute, except those excluded under Section 20.05, shall be submitted to binding arbitration." *Id.* at 176. Like the Fort Worth Agreement, the Johnson County Agreement defines a "Dispute" as "any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement or that concerns the relationship created by this Agreement." *Id.* at 175. The arbitration exclusion is also much like the exclusion in the Fort Worth Agreement. Section 20.05 of the Johnson County Agreement

allows KWRI, its divisions, and "controlled affiliates" to choose to sue (rather than arbitrate) "(i) to enjoin any infringement or misappropriation of its rights in the Trademarks, the Copyrighted Material, the System or its other intellectual property, or (ii) to collect any Production Royalty, Profit Sharing Contribution or other monetary obligation payable by Licensee." *Id.* at 177; *see also id.* at 111, 113 (defining "Company" as KWRI, "including its divisions and controlled affiliates," and defining "Affiliate" as "a Person that controls, is controlled by or is under common control with another Person").

The Dow Market Center Agreement's Arbitration Clause is the broadest of the three. It provides, "If the parties (together with the Controlling Principals and Licensee's Principals or any member of Licensee's Group) cannot fully resolve and settle a Dispute through mediation . . . , all unresolved issues involved in the Dispute, except those excluded under Section 20.05, shall be submitted to binding arbitration." *Id.* at 274. The Agreement defines a "Dispute" as

> any claim, controversy or dispute (a 'Dispute') that arises under or in relation to this Agreement or arises between or among any member of Licensee's Group and Company, its Affiliates, Regional Representatives, Successors and Assigns and their Respective Directors, officers, shareholders, members, managers, partners, attorneys, servants, employees, associates, independent contractors, agents, Regional Representatives, and representatives.

*Id.* at 273. Section 20.05, the arbitration exclusion provision, allows KWRI, its divisions, and departments to sue "(i) to enjoin any infringement or misappropriation of its rights in the Trademarks, the Copyrighted Material, the System or its other intellectual property, or (ii) to collect any Production Royalty, Profit Sharing Contribution or other monetary obligation payable by Licensee." *Id.* at 275; *see also id.* at 211, 213 (defining "Company" as KWRI, "including its divisions and departments").

In her First Amended Complaint, Dow alleges various causes of action—sexual harassment, sex-based harassment, a hostile work environment, retaliation, failure to provide a reasonable accommodation, tortious interference, breach of implied contract, and

3

breach of fiduciary duties—allegedly committed by one or more of the six Defendants. Along with KWRI and Keller, its founder and former CEO, Dow sued Go Management, LLC ("Go Mgmt."), which owns, manages, and operates KWRI's DFW regional office, and John Davis, David Osborn, and Smokey Garrett. Keller, Davis, Osborn, and Garrett are or were associated with KWRI during Dow's tenure. ECF No. 63 at 2, 36–52. Dow alleges that the conduct she complains of began in 1998, years before she signed her first Agreement, and that the conduct continues until the present. *Id.* at 35, 36.

The KWRI Defendants contend in their Arbitration Motion that (1) the Arbitration Clauses in the Agreements encompass all of Dow's claims against them and (2) her claims against the remaining Defendants ("the Other Defendants"), who did not sign the Agreements, are so intertwined with her claims against the KWRI Defendants that those claims are also subject to arbitration. ECF No. 75 at 1. Dow responds that (1) the Arbitration Clauses are invalid or unenforceable, (2) her claims are outside the scope of the Arbitration Clauses, and (3) the Other Defendants are not subject to arbitration. ECF No. 110 at 13–23. The Other Defendants contend that they are not subject to arbitration because (1) they are not parties to the agreement, (2) no exception can compel the arbitration of the claims against them, and (3) Dow's claims against them are outside the scope of the Arbitration Clauses. ECF Nos. 89 at 1–2; 91 at 2.

## LEGAL STANDARD

In determining whether to compel arbitration, a court must decide (1) whether a valid arbitration agreement between the parties exists and, if so, (2) whether the dispute falls within the arbitration agreement's scope. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Deciding whether the arbitration agreement is valid is an "analysis of contract formation[.]" *Id.* (citations omitted). After the movant produces "competent evidence showing the formation of an agreement to arbitrate . . . , [the] party resisting arbitration [must] produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher v. Vokey*, 860 F. App'x 354, 357–58 (5th Cir. 2021).

In this first step of the analysis, courts use state law to evaluate the agreement. *Edwards*, 888 F.3d at 745 (citation omitted). If the agreement at issue contains a choice-of-law provision, the law of the state named in that provision guides the inquiry. *See id.* The party moving for arbitration has the burden to show that the arbitration agreement is valid. *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003).

"When a court decides whether an arbitration agreement exists, it necessarily decides its enforceability between parties." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022). Thus, when a signatory movant seeks to bind nonsignatories to the arbitration agreement, as in this case, this first step is more involved. *Id.* at 401. The Court must then ask whether "a written arbitration provision exists that is made enforceable against (or for the benefit of) a third party under state contract law." *Id.* (cleaned up) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Crawford Pro. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014)). "'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Arthur Andersen LLP*, 556 U.S. at 631 (quoting 21 R. Lord, *Williston on Contracts* § 57:19, at 183 (4th ed. 2001)). The Fifth Circuit has already made an *Erie* guess that intertwined-claims estoppel—the only theory pressed by the KWRI Defendants in their motion—exists in Texas. *Newman*, 23 F.4th at 404; *Trujillo*, 846 F. App'x at 237.

If the movant satisfies the first step and the arbitration agreement has no delegation clause,[1] courts proceed to the second step: determining

---

[1] The parties do not argue that any Agreement contains a valid delegation clause demonstrating "clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012). And after reviewing the Agreements, the Court does not find that the Agreements contain a valid delegation clause. *See Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 279 (5th Cir. 2019).

"whether the current dispute falls within the scope of a valid agreement." *Edwards*, 888 F.3d at 743. The party resisting arbitration bears the burden of proving that a dispute is outside the arbitration clause's scope. *Polyflow, L.L.C. v. Specialty RTP, L.L.C.*, 993 F.3d 295, 303 (5th Cir. 2021) (citation omitted).

## ANALYSIS

Dow does not challenge the formation of the Agreements,[2] *see* ECF No. 110 at 7 ¶1.5, but she contends that the Arbitration Clauses are invalid and unenforceable and that her claims lie outside the Clauses' scope. *Id.* at 13–23.

**A. Dow's claims against the KWRI Defendants must be arbitrated.**

1. <u>The two-step test for compelling arbitration is satisfied.</u>

The Arbitration Clauses are valid with a broad scope. The three Agreements are contracts and governed by Texas law. *See* ECF No. 86 at 57 ¶ 19.01 (Fort Worth Agreement), 175 ¶ 20.01 (Johnson County Agreement), 272 ¶ 20.01 (Dow Market Center Agreement). Under Texas law, "a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem. L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied)). The three Agreements meet the above terms. With each Agreement, KWRI offered Dow (through her Licensee entity) a Market

---

[2]While challenges to the validity of an arbitration clause are for a court to decide, challenges to the validity of an entire contract are for an arbitrator to decide (if the arbitration clause is either unchallenged or upheld by the court). *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 553 (5th Cir. 2018) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006)); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04 (1967) (holding arbitration clauses are "separable" from the underlying contract). The Court upholds the Arbitration Clauses. Thus, to the extent Dow's complaints (e.g., about ambiguity of the definition of "dispute," inadequate and illusory consideration, and unconscionability) challenge the Agreements as a whole, such issues are reserved for the arbitrator.

Center, access to KWRI's name and system, and training in exchange for her payment of certain fees, royalties, and charges. *See* ECF No. 86 at 6, 13, 111, 127, 211, 224. Dow signed each Agreement as the Operating Principal of her Licensee, but she expressly agreed to be individually bound to the Agreements. "Texas courts have consistently held that a party's signature on a written contract is strong evidence that the party unconditionally assented to its terms." *Gallagher*, 860 F. App'x at 358 (cleaned up) (quoting *Bullock v. Am. Heart Ass'n*, 360 S.W.3d 661, 666 (Tex. App.—Dallas 2012, pet. denied)).

By producing the Agreements, the KWRI Defendants produced competent prima facie evidence of the formation of the Arbitration Clauses contained in the Agreements. *See, e.g.*, *Ron v. Ron*, No. 3:19-CV-0211, 2020 WL 1426393, at *3 (S.D. Tex. Feb. 5, 2020), *rpt. & rec. adopted*, 2020 WL 1700320 (S.D. Tex. Mar. 23, 2020), *aff'd*, 836 Fed. App'x 192 (5th Cir. 2020); *see also, e.g., Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 120–21 (Tex. App.—El Paso 2018, no pet.) ("The signed . . . contract sets out the terms of the underlying transaction, and the arbitration clause evinces a mutual intent to arbitrate. As such, . . . there is prima facie evidence of formation.").

Each Arbitration Clause is broad in scope, with a broad definition of the "disputes" it covers. *See Prima Paint Corp.*, 388 U.S. at 397–98 (describing as "broad" an arbitration clause applying to "[a]ny controversy or claim arising out of or relating to" the underlying contract). Broad arbitration clauses cover more than contractual disputes. They "embrace all disputes between the parties having a significant relationship to the contract, regardless of the label attached to the dispute." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). Thus, a dispute must only "touch matters" covered by a broad arbitration clause to fall within its scope. *Id.* at 1068. All of Dow's claims against the KWRI Defendants "touch matters" covered by the Arbitration Clauses. Thus, her claims are within the Clauses' scope.

Based on the above, the Court holds that Dow's claims against the KWRI Defendants must be arbitrated. As discussed below, none of Dow's arguments persuade the Court otherwise.

2. <u>The Court rejects Dow's arguments that the Arbitration Clauses are invalid or unenforceable.</u>

Dow contends that the Arbitration Clauses are invalid or unenforceable due to inadequate and illusory consideration, the absence of mutual assent, ambiguity as to the meaning of "dispute," and procedural and substantive unconscionability.

    a. *Consideration*

Dow argues that the Arbitration Clauses are invalid because the consideration supporting them is inadequate and illusory. She bases her contention on those provisions in the Agreements identified earlier in this Opinion that allows KWRI (but not her) to sue rather than arbitrate in certain circumstances. According to Dow, these exclusions favoring KWRI invalidate the Arbitration Clauses. The Court disagrees.

*First*, the consideration for the Arbitration Clauses is not inadequate. "[W]hen an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *Torres v. S.G.E. Mgmt., L.L.C.*, 397 F. App'x 63, 65 (5th Cir. 2010) (quoting *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding)). Thus, each Agreement provides sufficient consideration for its Arbitration Clause.

*Second*, expressly excluding certain KWRI claims from mandatory arbitration does not make the Arbitration Clauses illusory. As the Supreme Court of Texas has explained, "the fact that the scope of an arbitration provision binds parties to arbitrate only certain disagreements does not make it illusory," nor does "the mere fact that an arbitration clause is one-sided." *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505–06 (Tex. 2015). The case Dow relies on, *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012), is not on point. In that case, the Court held the arbitration agreement illusory because the movant could avoid its arbitration agreement with the nonmovant by unilaterally modifying it retroactively. *Id.* at 207–09. Here, the Parties never agreed to arbitrate the claims expressly excluded from arbitration in the Agreements.

8

The Court holds that the consideration for the Arbitration Clauses is sufficient and not illusory.

    b. *Mutual Assent and Ambiguity*

Dow's arguments that there was no mutual assent to arbitrate and that the Arbitration Clauses are ambiguous are actually arguments that her complaints fall outside the Clauses' scope. Specifically, she contends that "there was no mutual assent . . . between the parties that the scope of the License Agreements would be broadened to the extent that [the KWRI] Defendants[]desire and as such, the arbitration clauses are invalid." ECF No. 110 at 15. But she does not contend that there was no mutual assent to the Agreements or the Arbitration Clauses generally (and this Court has already held that element was met through her signatures on and express agreement to be individually bound to the Agreements). This argument is therefore more properly viewed as an argument that her claims are outside the Arbitration Clauses' scope. *See, e.g.*, *Anderson v. Va. College, LLC*, No. 3:12CV503TSL-MTP, 2012 WL 4052198, at *3 & n.3 (S.D. Miss. Sept. 13, 2012) (treating plaintiffs' argument that there was no mutual assent to submit their civil rights claims to arbitration as an argument that the plaintiffs' federal civil rights claims were outside the arbitration clause's scope, not as an argument challenging the clause's validity).

Similarly, Dow contends the Arbitration Clauses are ambiguous. But that argument also focuses on the scope of the Arbitration Clauses: she alleges that the ambiguity lies in the definition of "which disputes must be submitted to arbitration." ECF No. 110 at 16. Thus, her ambiguity argument is also really an argument about the Arbitration Clauses' scope.[3]

---

[3]The definitions of "disputes" subject to arbitration in each Agreement are broad, but they are not ambiguous. *See Jones v. Francis Drilling Fluids, Ltd.*, 642 F. Supp. 2d 643, 664 n.20 (S.D. Tex. 2009) (noting that the Fifth Circuit has "*broadly* construed language incidental or similar to the 'arising in connection herewith' language . . . [in maritime contracts] to *unambiguously* encompass all activities reasonably incident or anticipated by the principal activity of the contract" (emphasis added)v (internal quotation marks omitted) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)). "If a written contract is so worded that it can be given a definite or certain legal

9

*c. Unconscionability*

Dow also argues that the Arbitration Clauses are unconscionable. ECF No. 110 at 22–23. In Texas, an unconscionable contract is unenforceable. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). Unconscionability under Texas law can be procedural (involving circumstances surrounding the inception of the arbitration agreement) or substantive (concerning the fairness of the arbitration provision). *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004) (citing *In re Haliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). To decide whether an agreement is unconscionable, courts examine

> the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'nonbargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable.

*Alamo Moving & Storage One Corp. v. Mayflower Transit L.L.C.*, 46 F. App'x 731, 2002 WL 1973484, at *2 (5th Cir. July 31, 2002) (*quoting In re Turner Brothers Trucking Co.*, 8 S.W.3d 370, 377 (Tex. App. Texarkana 1999, no pet.)). Proving that an arbitration clause is unconscionable is the burden of the party opposing arbitration. *Id.*

Dow argues that the Arbitration Clauses are unconscionable for two reasons. First, it would have been unreasonable for her to assume

---

meaning when so considered and as applied to the matter in dispute, then it is not ambiguous." *Nelson v. Comm'r of I.R.S.*, 17 F.4th 556, 561 (5th Cir. 2021) (internal quotation marks omitted) (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 765 (Tex. 2018)). Even if the Arbitration Clauses were ambiguous, ambiguities in an arbitration clause are construed in favor of arbitration (Dow's assertion otherwise notwithstanding):

> When deciding whether the parties agreed to arbitrate the dispute in question, courts generally should apply ordinary state-law principles that govern the formation of contracts. In doing so, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.

*Polyflow*, 993 F.3d at 302–03 (citations omitted) (cleaned up).

10

during contract negotiations that the Arbitration Clauses in the Agreements would apply to her individual claims. Second, the Arbitration Clauses waive her right to a jury and "allow[] Defendants to hide behind the veil of arbitration and to conceal [their] wrongdoings."[4] The case Dow relies on as support deals with fraudulent inducement. *See In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012). Dow has not alleged fraudulent inducement.

Nevertheless, the Court notes that Dow signed all the Agreements and bound herself to them individually. They each contain provisions in which she acknowledged that she read and understood the Agreement and was given plenty of time to seek advice about the benefits and risks of entering into the Agreement. *See* ECF No. 86 at 60, 179, 277. Further, the fact that her claims against the KWRI Defendants must go to an arbiter instead of a judge or jury does not mean she will be left without a suitable remedy if she prevails. *Cf. Elkjer v. Scheef & Stone, L.L.P.*, 8 F. Supp. 3d 845, 856–57 (N.D. Tex. 2014) ("The mere fact that the arbitration clause requires her to submit her claims to an arbitral forum, rather than judicial, does not strip away her rights under the available statutes.").

Having rejected Dow's arguments as to the validity and general enforceability of the Arbitration Clauses, the Court holds that the KWRI Defendants have met their burden to prove the Clauses' validity as to Dow's claims against them.[5]

---

[4] Dow's allegations against Defendants are a matter of public record.

[5] Dow also argues that it would be inequitable to allow KWRI to rely on the Agreements as support for the Arbitration Motion because KWRI allegedly breached the Agreements and because they have expired. ECF No. 110 at 13 n.4. She further alleges that she is not bound by continued conduct. Dow offers no support for her expiration and "continued conduct" arguments, and the Court does not further address them. As for the breach allegation, as the KWRI Defendants point out, a defense challenging the entire contract, not just the arbitration clause, is for the arbitrator to resolve. ECF No. 84 at 5 n.1. *See In re FirstMerit Bank, N.S.*, 52 S.W.3d 749, 756 (Tex. 2002).

> 3. <u>The Court rejects Dow's arguments that her claims fall outside the Arbitration Clauses' scope.</u>

Dow contends that her claims are not within the Arbitration Clauses' scope because (1) they are based on allegations of "discriminatory, retaliatory, harassing, and/or related tortious conduct" committed against her by individual defendants, but the Arbitration Clauses govern only the conduct of the Market Centers, not the conduct of Defendants or her individual conduct; (2) her claims do not concern the establishment and operation of her Market Centers or an alleged breach of an Agreement; (3) she did not agree to arbitrate her individual claims; and (4) they fall outside the definition of "dispute." ECF No. 110 at 17–21.

As the Court already held, Dow signed the Agreements. In the Agreements, she expressly agreed to be bound to them individually. The Arbitration Clauses are broad and therefore apply to disputes that "touch" matters covered by the Agreements even if they do not literally arise from alleged breaches of the Agreements or conduct of the Market Centers. The definition of "dispute" in the Arbitration Clauses is broad enough to cover Dow's claims. Her claims all relate to her relationship with KWRI, Go Mgmt., and various individual Defendants operating under the KWRI umbrella who allegedly have or had supervisory control over her and her Market Centers. ECF No. 63. They therefore touch on the matters covered by the Agreements and fall within the Arbitration Clauses' scope. *See, e.g.*, *Mouton v. Metro. Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998).

Because the KWRI Defendants met their burden to prove the validity of the Arbitration Clauses and Dow did not meet her burden to show that her claims against the KWRI Defendants lie outside the Clauses' scope, the Court holds that these claims must be arbitrated.

## B. The Other Defendants cannot be compelled to arbitrate Dow's claims against them.

Dow and the Other Defendants contend that they are not parties or signatories to the Agreements and no exception authorizes compelling them to arbitrate Dow's claims against the Other Defendants. As the

Court held above, Dow signed the Agreements and agreed to be individually bound to them. Whether Dow would be bound to arbitrate her claims against the Other Defendants if they had not challenged arbitration would be a closer case. But the Court need not reach that issue. The dispositive issue is whether the Court can compel the Other Defendants to arbitrate Dow's claims against them when it is undisputed that the Other Defendants did not sign the Agreements.[6] Texas law is clear that the Court cannot.

Arbitration agreements rarely bind nonsignatories. *IMA, Inc. v. Columbia Hosp. Med. City*, 1 F.4th 385, 391 (5th Cir. 2021). Even agents who sign an agreement containing an arbitration clause on behalf of a principal cannot be personally bound by that arbitration clause absent agreement. *Covington v. Aban Offshore Ltd.*, 650 F.3d 556, 559 (5th Cir. 2011).[7] And the Arbitration Clauses here are no exception. This is not a case in which the Other Defendants are trying to compel Dow or KWRI to arbitrate claims raised by or against the Other Defendants. The KWRI Defendants are trying to compel the arbitration of claims Dow raises against the Other Defendants.

The KWRI Defendants contend that Dow and the Other Defendants must arbitrate her claims against the Other Defendants based on intertwined-claims estoppel.[8] A district court has discretion to employ equitable estoppel to compel arbitration. *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 608 (5th Cir. 2016). One type of equitable estoppel is intertwined-claims estoppel. *Hiser v. NZone Guidance, L.L.C.*, 799 F.

---

[6]No Party has alleged that any of the Other Defendants had an arbitration agreement with Dow or either KWRI Defendant.

[7]Unlike Dow, who agreed to be individually bound to the Agreements, the Covingtons did not. *Covington*, 650 F.3d at 559.

[8]The KWRI Defendants summarily raise agency and incorporation by reference for the first time in their reply brief. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("Reply briefs cannot be used to raise new arguments."); *see also Prescription Health Network, LLC v. Adams*, No. 02-15-00279-CV, 2017 WL 1416875, at *7 (Tex. App. Apr. 20, 2017) ("It is a wholly separate and new ground for setting aside the [arbitration award], which may not be raised for the first time in a reply brief.") (Pittman, J.).

13

App'x 247, 248 (5th Cir. 2020) (citing *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007) (orig. proceeding)). While the Supreme Court of Texas has not yet adopted intertwined-claims estoppel, the Fifth Circuit has determined that the Texas court would do so if confronted with the issue. *Hays*, 838 F.3d at 611. This Court is bound by that guess. *Newman*, 23 F.4th at 404.

"Intertwined-claims estoppel applies when (1) a nonsignatory has a close relationship with one of the signatories and (2) the claims are intimately founded in and intertwined with the underlying contract obligations." *Id.* (cleaned up) (quoting *Hays,* 838 F.3d at 612); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 639 (Tex. 2018). But a "close relationship" under Texas law is a term of art. *Newman*, 23 F.4th at 405. It "typically involve[s] some corporate affiliation between a signatory and non-signatory, not just a working relationship." *Jody James Farms*, 547 S.W.3d at 640 (citation omitted). "The relationship between a typical insurance agency and an independent broker or salesman, for instance, is not close enough in Texas. The relationship must be closer than merely independent participants in a business transaction. The test is one of consent, not coercion." *Newman*, 23 F.4th at 405 (cleaned up) (quoting *Jody James Farms*, 547 S.W.3d at 639, 640). A plaintiff's "treating multiple defendants as a single unit in her pleadings, raising virtually indistinguishable factual allegations against them . . . cuts in favor of a close relationship." *Newman*, 23 F.4th at 405 (cleaned up) (citing *Hays*, 838 F.3d at 612–13).

Although Dow does allege many of her claims against some or all Defendants, the KWRI Defendants do not meet their burden to show that all Defendants have a close relationship under Texas law, especially considering the *Jody James* holding and the nature of the KWRI business. Further, although the Court has held that Dow's claims are included in the broad scope of the Arbitration Clauses, the test for applying this exception is much narrower than the test for scope. The KWRI Defendants fail to satisfy this narrow test because they do not show that Dow's claims against the Other Defendants "are *intimately founded* in and intertwined with the underlying contract obligations"

14

found in the Agreements. *See Newman*, 23 F.4th at 404 (emphasis added) (cleaned up) (citing *Hays*, 838 F.3d at 612–13).

In Texas, the general rule is that "[i]f the parties have not agreed to arbitration, no trial court has the discretion to make them go; if they have agreed to arbitration, no trial court has discretion to let one wriggle out." *Merrill Lynch*, 235 S.W.3d at 193. The KWRI Defendants have not persuaded the Court that an exception to this general rule applies to Dow's claims against the Other Defendants. The Court therefore holds that Dow's claims against the Other Defendants are not subject to arbitration.

## CONCLUSION

The Court has determined that Dow's claims against the KWRI Defendants are subject to arbitration, but her claims against the Other Defendants are not. Accordingly, the Court **GRANTS** the Arbitration Motion in part and **DENIES** it in part. (ECF No. 75) Specifically, the Court **ORDERS** that the KWRI Defendants and Dow must arbitrate Dow's claims against them but **DENIES** the Arbitration Motion as to her claims against the Other Defendants.

Dow asks the Court to stay litigation pending arbitration.[9] The Court agrees that disposition is proper here. *See* 9 U.S.C. § 3; *see, e.g.*, *Tolliver v. Covington Credit*, No. 3:19-CV-02655-M, 2020 WL 2841393, at *2 (N.D. Tex. May 31, 2020).

It is **ORDERED** that this case is **STAYED** pending the results of arbitration. The Parties are **ORDERED** to file a Joint Status Report every 90 days from the date of this Order, apprising the Court of the Parties' progress toward resolving this case. The KWRI Defendants and

---

[9]Dow alternatively seeks a jury trial on the issue of arbitrability, relying on *American Heritage Life Insurance Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002). Her reliance is misplaced. Like the defendants in *Orr*, she failed to show that she is entitled to a jury trial. *See id.*; *see also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("A party to an arbitration agreement cannot obtain a jury trial merely by demanding one."). Dow also expressly waived a jury trial in the Johnson County and Dow Market Center Agreements. ECF No. 86 at 178, 276.

Dow must notify the Court of the arbitration's resolution within **ten days** of the arbitrator's decision.

The Court directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case until the Court orders it to be reopened.

**SO ORDERED** on this **2nd day** of **September 2022.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE